SALLIE G. OWENS *et al.*

*v.*

RUSSELL CROSSETT.

*Filed at Mt. Vernon January 31, 1883.*

1. INJUNCTION—*to prevent a trespass.* An injunction will not lie to prevent a simple trespass to property, consisting of a single act, where the person committing or threatening the trespass is able to respond in damages; but if he is insolvent, and trespasses of a grave character are threatened to be repeated, equity will interfere to prevent the wrong by restraining the threatened trespass.

2. Where a party, claiming to act as a road commissioner, had removed complainant's fences a considerable number of times, claiming they were obstructions to a public road, and had said he would remove them as often as replaced, and he had no property subject to execution, and the proofs failed to show the road was in fact located over the place in dispute, it was *held,* that the case fell within the exception to the general rule, and that a court of equity had jurisdiction to enjoin the defendant from again removing such fences, for the reasons there was no adequate remedy at law, and to prevent multiplicity of suits.

3. HIGHWAY—*party removing fences must show they are on the road.* A party attempting to justify the removal and threatened removal of fences on the ground they are on a legally established road, must not only prove the establishment of the road, but also that such road was established and located at the precise places where the fences are built.

4. SAME—*proof of, by user for twenty years.* Evidence tending to prove that a road had been traveled over uninclosed prairie land for forty years, in a general direction, but the line of travel varying considerably, and had been changed within twenty years past, is insufficient to show a road by user or prescription over a particular place in question, so as to justify a road commissioner in removing fences placed thereon.

5. Because a road is traveled, or even legally established, does not authorize a road commissioner to open or remove fences not within the boundaries of the road. His power to act is confined within the limits of the road, and to obstructions within those limits, and where he attempts to justify such a removal he must prove that his acts were done between the outer lines of the road.

6. EVIDENCE—*of field notes, to show location of a road.* To prove the establishment and location of a public road by commissioners appointed by an act of the legislature in 1847, some field notes were read in evidence, purporting to be those of the surveyor, dated in 1847, with certain pages cut out. The county clerk testified that he, on search, had not been able to find in his office any record of the road across a particular tract of land, and that the paper purporting to be the field notes was handed to him by a person collecting materials for a history of the county. There was no evidence of its authenticity, or how the person giving it to the clerk became possessed of it, or that it was ever filed as a part of the records establishing the road, or that the person making it was surveyor of the county, or was appointed by the commissioners to make the survey, and there was no proof of the signature of the surveyor, or that the notes were ever filed or intended to be filed: *Held,* that the evidence was not proper, and was inadmissible.

APPEAL from the Circuit Court of Marion county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. WILLIAM WALKER, and Mr. HENRY C. GOODNOW, for the appellants:

Injunction is a proper remedy to enjoin a continuous trespass. *Smith* v. *Bangs*, 15 Ill. 400; *Smith* v. *Price*, 39 id. 28; *City of Peoria* v. *Johnson*, 56 id. 48; *McIntyre* v. *Story et al.* 80 id. 127.

The act of 1847 is in violation of sections 8 and 11, of article 8, of the constitution of 1818, that "no citizen shall be deprived of his property without due process of law, nor without just compensation." The terms "law of the land," and "due process of law," are synonymous. *Reynolds* v. *Baker*, 6 Cold. 221; *State* v. *Statin*, 6 id. 234; *Bullock* v. *Geomble*, 45 Ill. 218.

Those terms mean a general public law, equally binding on all members of the State. *Vaughn* v. *Haddell*, 2 Yerg. 260; *Walby* v. *Kennedy*, id. 554; *State Bank* v. *Cooper*, id. 599; *Jones* v. *Perry*, 10 id. 59.

To give the public a right by user to a road, the user must be adverse. 3 Kent, 419.

There can be no adverse user so long as the owner has no desire or occasion to use the land. *Warren* v. *Jacksonville*, 15 Ill. 236; *Kyle* v. *Town of Logan*, 87 id. 67.

Mr. M. SCHÆFFER, and Mr. T. E. MERRITT, for the appellee:

The use of land for a highway for a period of twenty years is sufficient to establish the existence of the highway. *Daniels* v. *People*, 21 Ill. 439; *Town of Lewistown* v. *Proctor*, 27 id. 414.

A public road may be established by user as well as by the record of its being laid out, and the evidence of such user may be by parol. *Commonwealth* v. *Low*, 3 Pick. 412; *Green* v. *Canaan*, 29 Conn. 167; *Folger* v. *Worth*, 19 Pick. 108; Washburn on Easements and Servitudes, 173.

The failure, if any, to file the plat in Marion county, should not vitiate the action of the commissioners. This was merely directory. *School Directors* v. *School Directors*, 73 Ill. 249.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, filed by appellants, to enjoin appellee from removing the fence on the opposite sides of a field, where it is claimed a road enters and passes through the field. Complainants deny that there is any regular, legally laid out or established road that passes through the field, and defendant claims there is, and justifies his acts on the ground that he is a road commissioner, and has the right, and that it is his duty, to remove the fence as an obstruction, and keep the road open and free to travel by the public. These are the grounds of the controversy.

It is first urged in affirmance of the decree dismissing the bill, that it will not lie to enjoin a trespass. Such is undoubtedly the rule where it is a simple trespass to property, and is but a single act, and the person committing or threatening the trespass is able to respond in damages; but where he is insolvent, and repeated trespasses of a grave character are threatened to be repeated, equity will interfere to prevent the wrong, by restraining the threatened trespass. Here, the fence had been removed a considerable number of times, and it is admitted that defendant had said he would, and intended to, remove it as often as it should be replaced, and that he has no property subject to execution. This brings the case within the exception to the general rule, and authorized the court to entertain jurisdiction of the case, because there was not an adequate remedy at law, and also to prevent a multiplicity of suits at law.

Appellee has endeavored to establish his defence by showing that the road was located and established by commissioners appointed by the act of the legislature, adopted the 27th of February, 1847. (Sess. Laws, 93.) Also, by proof that, under the appointment of commissioners by the county commissioners' court, at its September term, 1842, a road was located, and is established, of which the portion in con-

troversy is a part, and further, that the road is established by user as a public highway for twenty years or more. The claim that this portion of the road is any part of that located by the county commissioners' court, in 1842, is not shown. There is no evidence showing, or tending to show, where that road was in fact located. The general direction no doubt appears, but there is no evidence that it passed over any portion of the land of appellants. For aught that appears, it may not have passed within miles of this road at that point. It devolved on appellee not only to prove that the road was established, but that it was at the precise places where he removed the fence, to establish this defence. This he has clearly failed to do.

Has appellee proved that this is a part of the road located by the commissioners appointed by the General Assembly? The proof shows that they located a road, but it does not show that this is any part of that road. Some field notes were read in evidence, purporting to be connected with the location of a road by the commissioners appointed by the act of February 27, 1847, and purporting to be signed by Seth Fuller, surveyor of Bond county, and bearing date the 19th day of August, 1847. The paper has the file mark of the county clerk of Marion county, on the 14th day of November, 1881, but it is not signed. It also appears that pages 21 and 22 of these notes of the survey had been cut out. The county clerk of Marion county swears that he had searched, but had been unable to find any record of a road running across this land, in his office; that the paper purporting to be the field notes of the survey of the road located by the commissioners under the act of 1847, was handed to him by a person who was collecting facts from which to write a history of the county, who had been searching among old papers pertaining to his office. There was no evidence of its authenticity,—not even the evidence of the person who handed it to the clerk as to how he became possessed of it,

or that it was ever filed as a part of the records establishing the road of which it purports to be a survey. There is no evidence Fuller ever lived in or was the surveyor of Bond county, or if he did live in that county, that he was appointed by the commissioners to make the survey, nor is his signature proved to be genuine, nor is there the slightest proof that the commissioners intended the paper to be filed, or that it ever was his purpose to or that he did file it. We have but the paper, without knowing by whom made, or the purpose for which it was made, or in whose custody it has remained. This falls far short of legitimate evidence, and was not admissible. It does not matter, therefore, whether these field notes call for a road across this land at the place traveled as a road, or not, as the field notes are not proved to have been made according to the requirements of the law, or to be authentic. There is nothing to show they are not fabricated, or were made for other purposes than to be filed as evidence of the place where the road was located.

As to the claim of user, there is a large amount of evidence, extending back more than forty years. It tended to prove, and does prove, that there has been a road traveled in the general direction, and near to where appellee claims it was located; but there is little, if any, that proves or tends to prove that the travel has ever been, or now is, within the lines within which it was located, or within the same lines traveled for twenty years. In fact, the decided preponderance is, that the line of travel has constantly varied, and that it is more than the width of the road, as claimed to have been laid out, from where it was formerly traveled, and these changes have been made within less than that period. Again, this portion of the road ran through uninclosed prairie lands, and the people traveled as they chose, not being confined to any definite track. The evidence not only fails to prove that the road was traveled at the places where appellee removed the fence, continuously for twenty years, but it, to our minds,

satisfactorily proves that it was not thus traveled. Because a road is traveled, or even legally established, that does not authorize a road commissioner to open or remove fences not within the boundaries of the road. His power to act is confined to the territory of the road, and to obstructions within that territory; and when he justifies, he must prove that his acts were done between the outer lines of the road. The evidence shows that the road authorities made diligent search for the evidence that a road was located on this land, but were unable to find any to prove the fact, and they believed that none existed, or if it did, there was no evidence of the fact, and for that reason, and to accommodate public travel, compromised, and took from appellants a strip for the purpose, on one side of the land, and agreed to abandon the old traveled way. A road may no doubt be acquired over uninclosed prairie land by user, but it is more difficult to confine the travel continuously over precisely the same track or line of travel, and even when that is done, it is more difficult of proof, than when confined by lanes, or, when in the timber, by trees, and other objects that confine travel within the boundary lines of the road. But in all cases, to establish the justification of removing obstructions, it must be shown that they are actually within those lines.

All the evidence considered, we are clearly of opinion that appellee failed to establish a right to remove or break down the fence, as he claimed a right to do, and the court below erred in dismissing the bill, and the decree must be reversed and the cause remanded.

*Decree reversed.*