## WILLIAM W. THORNTON

*v.*

## WILLIAM ROLL *et al.*

*Filed at Springfield September 9, 1886.*

1.  INJUNCTION — *to prevent a threatened trespass.*  Where one party threatens to go upon the land of another and remove earth therefrom to make an embankment for a public road, in the absence of any allegation in the bill showing the insolvency of such party, or that irreparable injury will follow, no injunction will lie to prevent the threatened trespass.

2.  SAME — *as to a threatened nuisance — as, in case of certain intended action of highway commissioners.*  Where commissioners of highways are proceeding to do an act within the powers conferred on them by law, and it does not appear with certainty that such act may prove injurious to the private rights of another or become a private nuisance, a court of equity will not enjoin their proposed action until the question of nuisance is determined by actual experience.

3.  An act required by the public interest will not be enjoined upon the ground that it may prove a private nuisance.  To justify an injunction in such case, a very strong case must be made by the bill, and sustained by the proofs.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Shelby county.

This is a bill in equity, by William W. Thornton, against William Roll, James Stewardson, and others.  The complainant alleges that he is the owner in fee simple of that portion of the east half of the south-west quarter of the south-west quarter of section 8, and of the east half of the south-west quarter, and the south-east quarter of said section 8, in township 11 north, range 4 east, of the third principal meridian, in said county, lying north of the main public road running east from the city of Shelbyville through and along the south line of said land and across the Kaskaskia river; that the said river is a private stream running through the said land; that

William Roll, James Stewardson and William Henry, Jr., are
and have been since the . . . . day of May, 1883, the commis-
sioners of highways of the town of Shelbyville, in the county
of Shelby, and State of Illinois; that the said real estate and
the said road are in the said town of Shelbyville; that about
sixty acres of said land, lying north and west of said river,
and north of the line of said road, consists of tillable bottom
land, and is worth $50 per acre; that in the year 1877 the said
road was built, where it now is, by the three commissioners of
highways of said town, and an embankment of the height
of about twenty feet was by them constructed along the line
of said road, from the foot of what is known as the Thornton
bluff, across said bottom land, for a distance of about one
hundred and fifty yards, to the said river, and forming the
western approach to the public bridge over said river; that at
the same time a similar approach was constructed from the
east end of said bridge to the high ground on the east of said
river; that said river has well defined banks, within which
the stream is usually confined; that once or twice each year
said stream overflows its ordinary banks, and the water covers
the low lands above mentioned, as has always been the case
during times of very high water, both before and since the
construction of said embankments or bridge approaches. The
complainant further shows, that the said William Roll, James
Stewardson and William Henry, Jr., commissioners of high-
ways as aforesaid, threaten, and are about, to take away a
portion of said embankment or bridge approach, about one
hundred yards west of said river bridge, and to construct at
said point a bridge of about forty-five feet in length, with an
open space or water way of forty-five feet in width underneath
the same; that the said commissioners of highways, Roll,
Stewardson and Henry, on or about the 2d day of August,
1883, published and posted up certain notices, in which they
advertised they would, on the 13th day of August, 1883, re-
ceive bids for the excavation of the earth for the said bridge,

which they termed the "Slough bridge," and for stone abut-
ments for the said bridge, and also for foundation timbers
for said abutments, and also for widening the said bridge
approach, and in which they advertised that the said several
pieces of work would be let by contract to the lowest respon-
sible bidder, and in which they also advertised that the earth
necessary for the widening of said embankment should be
taken from the said Thornton bluff,—a portion of the said
land of the complainant. The complainant further shows that
thereafter the said commissioners received bids for the said
several pieces of work; that on the 22d day of August, 1883,
the said Roll, Stewardson and Henry, as such commission-
ers, entered into a contract with one James Miller for the
erection of the said stone abutments for said bridge, and also
into a contract with one Jerry Sullivan for the excavation of
said embankment for said bridge, and for the widening of the
said embankment or bridge approach, to the width of twenty
feet at the top of the grade. The complainant further shows,
that the said James Miller and Jerry Sullivan are each about
to begin the work so contracted for by them; that in the pro-
secution of said work the said contractors are about to enter
upon the land of the complainant; that the said Jerry Sulli-
van intends and is about to excavate from the said Thornton
bluff, belonging to the complainant, large quantities of earth,
for the purpose of widening said embankment; that the pro-
posed widening of said embankment, if carried out, will cause
the taking of a strip of the complainant's said land, of the
width of about four feet and of the length of about four hun-
dred feet; that the extreme limit of said road extends no
further on the complainant's said land than the present limit
of said embankment at the bottom; that neither the said
commissioners, nor the said James Miller, nor the said Jerry
Sullivan, have received any authority or permission, from the
complainant, to enter upon the complainant's said land, nor
to excavate earth from the said Thornton bluff, nor in any way

to take or damage any of complainant's said land; that the said commissioners have not, by legal proceedings or otherwise, acquired any right to take or damage the complainant's said land. Complainant further shows, that in case the said excavation in said embankment is made and the said slough bridge constructed, large quantities of water from said river, during every period of high water, once or twice during each year, will be carried over the complainant's lands; that a channel will be formed across said land and through said slough bridge; that large quantities of the soil of said land, which is a light alluvial soil, and easily washed, will be washed away; that each year the channel will grow deeper, and the said washing away of the soil will increase; that large quantities of drifting trees and wood will be carried, by reason of said current, over and upon said lands, and when such high waters subside, said drift will be lodged upon said land; and by reason of said continuous washings and driftings of wood and trees, a large portion of said low lands, to-wit, about forty acres, will be rendered totally unfit for cultivation, and useless to the complainant. And the complainant further says, that at present, and naturally, all of said waters and said drift pass along the current and accustomed channel of said river, under said river bridge, and without damage to the complainant's land. The complainant further says, that the building of said slough bridge is not a work of public necessity, and will result in irreparable and ever continuing and recurring injury to the complainant's said land.

Roll, Stewardson, Henry, Miller and Sullivan are made defendants, and required to answer without oath. And it is prayed that said defendants, and each and every one of them, and their attorneys, solicitors, agents and servants, may be restrained, by an injunction issuing out of this court, from proceeding in any way in the construction of the slough bridge and in the widening of the said embankment as aforesaid, and in the excavation of the said embankment for the said slough

23—118 ILL.

bridge, as aforesaid, and from trespassing upon and in any
way interfering with or taking or damaging the complainant's
said land, and that the complainant may have such other
further and different relief as equity may require. There was
also a prayer for a temporary injunction.

A temporary injunction was issued upon the filing of the
bill. Afterwards, Roll, Stewardson and Henry answered, as
follows:

Defendants, for answer, say that they have no knowledge
as to the title of complainant to the lands in bill described,
and require proof of such title; but they deny, as they are
informed and believe, that he is the owner of any land con-
tiguous to said public road, west of said Kaskaskia river, as
alleged in said bill; they admit they are the highway com-
missioners of said town; they admit that about sixty acres
of the lands mentioned are in the bottom of said river, and
if said bottom did not overflow so often, that the same would
be good, tillable land, but deny that the same is worth $50
per acre, or near such sum; they deny that said road and
embankment were made and constructed by the highway com-
missioners in 1877; they were in that year partially repaired
and the embankments made higher and wider; they deny that
in that year an embankment was constructed from Thornton
bluff, on the line of said road, to said river, but aver it was
only repaired in that year. For further answer defendants
say, as they are informed and believe, and so charge, that for
full thirty years last past, except the last five years, there was
a bridge across the said bottom, between the west end of the
river bridge and the bluff, where said roadway now is, used
by the traveling public, and repaired by the public authori-
ties from about the year 1850 until in 1878; that in the
year 1858 said roadway and embankment, at the same place
they now are, were repaired, and a slough bridge, as a part
of the same roadway west of said river, was constructed by
order of the county commissioners' court of said county, and

from that time said embankment and slough bridge were used by the public as a highway, and were repaired by the public authorities continuously, until 1878. In 1878 the said slough bridge was removed, and the place filled with earth, and at the time, the complainant was one of the highway commissioners of said town. Defendants aver that there is no order of said highway commissioners authorizing the removal of said bridge, and that the complainant was clerk of said board at the time, and made the contract. Defendants further answering, say it is true said river, at a low stage of water, has banks then visible; and they aver that said bottom is overflowed three or four times in each year, so as to prevent the same from being either tillable or pasture land; and they further aver that the overflow of said bottom land is as frequent and constant, and with as great depth of water, since the removal of said slough bridge, in 1878, as before; and defendants further aver, that frequently, during every year, the water of said river is not confined within its banks, but overflows said bottom land periodically, and always has done so. For further answer, defendants say, as highway commissioners of said town, and in the discharge of their duties, they had charge of the roads and bridges therein, and it was and is their duty, under the law, to keep the same in repair, and to improve them so far as practicable, and that as said embankment was too narrow to allow travelers to pass each other, and was dangerous to the traveling public, and for other reasons to be mentioned herein, the said defendants, acting as such highway commissioners, did determine to remove fifty feet of said embankment, and with said earth widen the remainder of said embankment, and to place in said excavation a double-track bridge, fifty feet in length, so that the water upon said bottom land could have sufficient passway; and they also determined to widen said embankment, and in pursuance of such determination they did post up notices, a copy whereof is annexed to the said bill, and they state that before posting

of said notices they had permission from Thomas M. Thornton, a brother of complainant, to obtain the necessary earth from said Thornton bluff, and that said Thomas M. Thornton informed them that he had control of the same, but on the day of said letting he withdrew said permission, and said he would prosecute all persons who undertook said work. Defendants for further answer say, in consequence of the withdrawal of said permission to procure earth from said Thornton bluff, they did, on the 22d day of August, 1883, make a contract with their co-defendant, Jerry Sullivan, only to make an excavation in said embankment to admit a bridge of the length of fifty feet, including abutments for the same, and to place the earth so excavated from said embankments, or the remaining portion thereof, so as to widen the same, and on the same day they made a contract with their co-defendant, James Miller, to furnish the material and erect the necessary stone abutments for said bridge; but respondents deny that in their prosecution of said work, under said contracts, said James Miller and Jerry Sullivan, or either of them, ever had, or have, any intention to enter or trespass upon the land of complainant, and they deny that said Jerry Sullivan, in pursuance of said contract or otherwise, intended or intends, or was, or is about, to excavate or take any earth or other material from said Thornton bluff for the purpose of widening said embankment, or for any other purpose; and they deny that the widening of said embankment will encroach in the slightest degree upon any land of complainant; and they deny that said road, where said work is contemplated, is upon the land of complainant, or that he is the owner of any land adjoining the same, and they deny any and all intention, in any manner whatsoever, by themselves, or through their co-defendants, or any other person, to encroach upon or take or damage any of the lands of complainant. Defendants, for further answer, deny that the making of said excavation, and the construction of said contemplated bridge, will

cause large quantities of water to flow over the land of complainant, and form a channel across the same, and wash away the soil thereof, and lodge drifting trees and wood thereon; and they deny that thereby forty acres, or any portion of the land of the complainant, will become unfit for cultivation, or useless; and they deny that it has ever been true that the water of said river and driftwood naturally pass along the channel of said river without injury to the land of complainant. On the contrary, for further answer, defendants say and aver that the waters of said river, from time immemorial, have passed over and overflowed the said land of complainant; and he states in his bill, "that once or twice each year said stream overflows its ordinary banks, and the water covers the low land above mentioned, as has always been the case during times of very high water, both before and since the construction of said embankments or bridge approaches." And defendants further aver, that in the year 1858 an embankment was constructed on the same ground where it is at present, from the west end of the river bridge across said bottom to the high land, a distance of about five hundred feet, except that a bridge called a "slough bridge," of the length of one hundred feet, was erected as a part of said embankment and roadway; that said embankment was about thirteen feet high, and that the same embankment has continued, and been used and worked upon, as a public highway, from the year 1858 until the present time; that said slough bridge remained a part of said highway from the year 1858, and prior, until the year 1878; that in the year 1878, when the complainant was one of the highway commissioners of said town, said slough bridge was removed, and the space occupied by it was filled with earth; and defendants aver that since the removal of said slough bridge, as aforesaid, as much water, during the rainy season, has flowed over the land of complainant as did before said removal, and that during the past spring and summer the said bottom has been overflowed

by the waters of said river as many as six times. Defend-
ants, further answering, say, that said bottom land in the bill
mentioned, is not good, tillable land, and same is not good
pasture land, on account of said overflow, and in proof thereof
they aver that the complainant has not cultivated the same,
nor had it cultivated, for the past two years, and they further
state that the passway for the water, by the erection of the
contemplated bridge, would cause the water to flow from the
land of the complainant more rapidly than without the bridge.
For further answer, defendants say the building of the bridge
contemplated by them, and contracted for, is a work of the
highest public necessity. There is a costly bridge across said
river, to which the said embankment across said bottom leads.
The banks of said river at said point are low, and the stream
is sluggish. In freshets, which occur every year, and a num-
ber of times in each year, the said bottom lands are frequently
overflowed, and this has been the case beyond memory. The
channel of the river is not sufficient to carry off the increased
volume of water since the removal of said slough bridge, in
the year 1878. The said embankment obstructs the passage
of the water from the bottom land; it remains thereon longer
than it did before, and when it reaches the embankment, and
is there checked in its onward course, the action of the water
softens the earth of said embankment and gradually washes
it away, and thereby its stability is endangered. Since the
removal of said slough bridge a portion of said embank-
ment east and west of said river bridge was washed away, so
as to render the same dangerous to the traveling public, and
a portion of the bank of the river, of the length of one hun-
dred and thirty-seven feet, and about the width of sixty feet,
has, by the action of the water, been washed away, or has
fallen into the stream, and this has been caused by obstruc-
tion of the water by said embankment. Also, the forcing of
so much more water into the channel of the river, by the
solid embankment, has caused an extensive washing around

and about the abutments of the river bridge, and greatly endangered said bridge, hence the defendants, in the exercise of their best discretion, and in the discharge of their duty, under the law, to repair and improve the roads and bridges in said town, have determined that the contemplated bridge is necessary, and in pursuance of such determination did, on the 18th of August, 1883, enter into a contract for the same. For further answer, defendants say that the construction of said contemplated bridge will not be an irreparable injury to the land of complainant, for they aver that the water will overflow said land as much without said bridge as with it, in a time of freshet, and that with the bridge it will pass away from said land more rapidly than without said bridge. They also deny that the said bridge or the said embankment has resulted, or will result, in "ever continuing and recurring injury to said land," for they state the fact to be that the character and location of said land as low and bottom land, contiguous to a sluggish stream, with very low banks, cause all the injury which complainant's land has or will sustain. Defendants, for further answer, say it is necessary to the convenience and safety of the public that said embankment should be widened, so as to permit carriages and wagons to pass each other; that it is about thirteen feet high, and, including the contemplated bridge, is about five hundred feet long, and it is now too narrow to allow carriages and wagons to pass each other, and they aver that there is a good deal of travel over the same, and it is essential to the traveling public that the same should be repaired and widened, but they deny that in the prosecution of said work a strip of four feet, or any part of the land of complainant, will be needed or taken, or damaged, or in any manner trespassed upon, even if he owns any land contiguous to said embankment, for they aver the complainant has by his conduct, and by fencing said bottom land near said roadway and embankment, dedicated to the

public a strip of land wider and more than is or ever will be necessary in the repair of said embankment.

This answer was sworn to. Sullivan and Miller answered as follows : "Defendants, for answer to such of said bill as charges them in any manner, say it is true that said Miller made a contract with the highway commissioners of said town of Shelbyville, to furnish the stone and construct the necessary stone abutments for the bridge called the slough bridge, and said Sullivan made a contract with said commissioners for the excavation of said embankment where the said bridge is to be placed, and put such earth on the said embankment, between said slough bridge and the bridge across the river, and not, as stated in said bill, to widen said embankment to the width of twenty feet at the top of the grade, but they deny that in the prosecution of the work contracted, they were about or intended to enter on the land of complainant. Said defendant Sullivan says he did not intend and was not about to excavate from said Thornton bluff, or to take any earth or other material therefrom, to be used on said embankment, and that he made no contract so to do, and that all allegations to that effect in said bill are wholly untrue. Defendants deny any and all intention to intrude or trespass upon the lands of complainant. This was also sworn to.

Complainant was allowed to file the following amendment to his bill. After striking out certain specified words, insert: "That the complainant is the owner of the south-east quarter of section 8, and of the east half of the south-west quarter of section 8, and of $18\frac{48}{100}$ acres off the east side of the south-west quarter of the south-west quarter of section 8, being lots 8 and 9 of Brewster's subdivision of lands adjoining Shelbyville, as platted and recorded in book —, on page —, in the recorder's office of said county, all being in township 11 north, range 4, east of the third principal meridian; that the public road running east from the city of Shelbyville runs through and across said land, and across the Kaskaskia river,

upon said land; that the complainant is seized in fee simple of said south-east quarter of section 8, and of said east half of the south-west quarter of section 8, and of said lot 8, and of $3\frac{36}{100}$ acres off of the north side of said lot 9; that the complainant is seized in fee simple of the undivided one-sixth part of the remaining portion of said lot 9, to-wit, all of said lot 9, except said $3\frac{36}{100}$ acres off the north side of the same, containing $5\frac{12}{100}$ acres."

During term time, a motion was made by the defendants to dissolve the injunction, upon bill, answers and affidavits, and the court, after duly considering the motion, dissolved the injunction and dismissed the bill. From that decree an appeal was prosecuted to the Appellate Court for the Third District, where the decree of the circuit court was affirmed. The present appeal is from that affirmance.

Messrs. HAMLIN & HOLLOWAY, for the appellant:

When a corporation of *quasi* public nature is about to do permanent injury to private property, the act, though a trespass in its nature, being a continuous one, will warrant the interposition of equity. High on Injunctions, sec. 764; *Bryan* v. *Brown*, 18 Mich. 196; *Green* v. *Green*, 34 Ill. 320; *McIntyre* v. *Storey*, 80 id. 127; Hilliard on Injunctions, sec. 9; Bispham's Eq. sec. 402.

When the result would be irreparable injury, the party threatened is not required to wait until he can demonstrate that the injury will follow. *Cobb* v. *Railroad Co.* 68 Ill. 235; *Livingstone* v. *Livingstone*, 6 Johns. 497; *Comrs. of Highways* v. *Durham*, 43 Ill. 92; *Hicks* v. *Silliman*, 93 id. 255.

Public authorities have no right to change the natural flow of water to the injury of private property. *Railroad Co.* v. *Cox*, 91 Ill. 500; *Nevins* v. *Peoria*, 41 id. 502; 3 Kent's Com. 439.

Any injury to land which deprives the owner of the ordinary use of it, is equivalent to a taking of the land. *Hooker* v.

*N. H. and N. Co.* 14 Conn. 146; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166; *Avimand* v. *Green Bay Co.* 31 Wis. 316; *Nevins* v. *Peoria, supra.*

It is inconsistent with the easement in the public to cut an opening or make a waterway in the highway, the effect of which will be to divert the water of a regular defined river, and to change or divide its channel, and to destroy private property. *Pettigrew* v. *Evansville,* 25 Wis. 223; *Livingstone* v. *McDonald,* 21 Iowa, 160; *Butler* v. *Peck,* 16 Ohio St. 335.

Messrs. THORNTON & LADD, for the appellees:

A court of equity will not interfere with the exercise of the discretionary powers vested in officers. *Bush* v. *Carbondale,* 78 Ill. 75; 2 High on Injunctions, sec. 1240; 1 Dillon on Mun. Corp. sec. 94.

As to when an injunction is the proper remedy, see *Dickey* v. *Reed,* 78 Ill. 269; 1 High on Injunctions, secs. 7, 9, 22, 1270.

It may be regarded as settled that an injunction will not be granted to an abutting land owner on account of expected or consequential damages. *Patterson* v. *Railroad Co.* 75 Ill. 588.

Appellant must first settle his right to damages, and ascertain the measure in an action at law, and then, if necessary, equity may assist. *Denning* v. *City of Aurora,* 40 Ill. 480; *Bliss* v. *Kennedy,* 43 id. 67.

To authorize an injunction in a case like this, the injury and damage must be real, not speculative. The damages must be actual. From the proof the injury is not only very uncertain, but the evidence greatly preponderates against the conclusion that the land will sustain any damage. *Railroad Co.* v. *Francis,* 70 Ill. 238; *Railroad Co.* v. *Hall,* 90 id. 43.

There is no charge of insolvency in the bill, and the commissioners of highways, who act in an unlawful or careless manner in the performance of their duties, are individually liable,

·and may be sued, whether in or out of office. *Leanney* v.
*Smith,* 86 Ill. 391; *County* v. *Town of Hartland,* 95 id. 517.

The commissioners can not be directed or controlled by the
·court to make repairs in any specified manner. *County of
St. Clair* v. *People,* 85 Ill. 397.

Per CURIAM: That part of the bill which alleges that it
·is threatened to take earth from Thornton bluff, without the
·consent of the appellant, charges but a threat to commit a
trespass upon real estate; and there being no allegation that
·the parties threatening are insolvent, it can afford no ground
for an injunction. (*Owens et al.* v. *Crossett,* 105 Ill. 354.)
That allegation is, moreover, put effectually out of the case
by the answers of the defendants, and the proofs, which show
that before the bill was filed, the intention to take earth from
Thornton bluff was abandoned. The contract with Sullivan
is simply to make an excavation for an opening in the em-
bankment, and to deposit the earth taken therefrom, on the
remaining embankment, and there is no pretence that the
commissioners have a contract with any one else to take earth
from Thornton bluff.

The allegation in the bill, that the commissioners threaten
and have contracted to widen the embankment to the width
of twenty feet, and that this will result in taking four feet in
width and four hundred feet in length of the land of the ap-
pellant, is not sustained by the preponderance of ˏthe proofs.
Each defendant, under oath, denies that it is intended, in
widening or improving the embankment, to invade the pos-
session of the appellant, and this is not satisfactorily over-
come by other proof.

This leaves, then, only the allegation of the threatened
nuisance,—namely, that by making the excavation, as pro-
posed, in the embankment, the water will be drawn off appel-
lant's land, when it is flooded, in a current, whereby his soil
will be washed away, and driftwood will be deposited upon

his land.   This allegation, it is manifest, is not a charge of the creation of a *nuisance per se,* like the erection of a powder mill, or works emitting offensive and poisonous vapors.   The excavation is within the discretion conferred by law upon the commissioners, and there is no reason to apprehend that, of itself, it can be harmful to others, or that, in effecting it, injury will result to the appellant, but the fear is, simply, after it is made, floods will come, and the water then upon appellant's land, in consequence of this excavation, will be so drawn off as to injure it, in a manner that it would not otherwise injure it.   The rule, as applicable to such cases, is thus laid down in Wood on Nuisance, sec. 788 : "But to entitle a party to relief in such cases, a very strong case must be made by the bill, and sustained by the proof, as if, on coming in of the answer, the fact of contemplated nuisance is fully denied, or if, upon the facts, there is a reasonable doubt of the effect of the erection, the injunction will be denied until the question of nuisance is determined by the actual use of the property." To like effect, see, also, *Dunning* v. *City of Aurora,* 40 Ill. 486 ; High on Injunctions, sec. 488.

There is here a large number of witnesses, quite respectable in character, we have no doubt, who show, by their affidavits, that the appellant will be injured in the way he alleges in his bill; but, on the other hand, there is about an equal number of witnesses, and, we presume, of equal respectability, who show, by their affidavits, directly the reverse,—and to us it seems quite as probable that they are right as the others. We do not think it advisable to enlarge this opinion by quoting these affidavits, or commenting at length upon their language. They have all been read and carefully considered, and, to say the least, we are not clearly satisfied that appellant must sustain the injury he apprehends.   Some witnesses, indeed, express the belief that the excavation will be a positive benefit to him, and give plausible reasons for the belief.   Necessarily, much connected with the question is purely theoretical,

and never can be demonstrated by any other mode than actual experiment. The good faith of the commissioners is put beyond question by the evidence, and it is likewise very satisfactorily shown that the public interest requires either this improvement, or one of a kindred character, for the protection of the embankment near the river. We are not satisfied that the decree of the circuit court is wrong.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

This case, when first decided, was assigned to the late Justice DICKEY, to prepare the opinion, but he having prepared no opinion in his lifetime, the case was again assigned since his death, and the present opinion has been prepared.