158  505
  71a  529
158  505
. 74a  473

HENRY HARMS *et al.*

*v.*

CHARLES F. JACOBS.

*Filed at Ottawa October 11, 1895.*

1. INJUNCTION—*power of equity to restrain trespasses—insolvency of defendant.* Equity has no jurisdiction to restrain trespasses because of irreparable injury, when insolvency of the defendants is the only fact averred which would give such jurisdiction, and this is disproved by the evidence.

2. JUDGMENTS AND DECREES—*decree cannot exceed relief prayed.* A decree that complainant has title in fee simple absolute as against the defendants is not sanctioned by a bill which seeks only to restrain trespasses, although the answer alleges title in defendant.

APPEAL from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

On April 9, 1894, Charles F. Jacobs exhibited his bill in the Superior Court of Cook county, against Henry Harms, Edward J. Harms, Emil Harms, Henry Harms, Jr., Edward Lockhurst and Philip Brazel, for the purpose of restraining Henry Harms and the other defendants, his agents, from interfering with the possession of the property in the bill mentioned and described, and from removing complainant from or preventing him from rebuilding thereon, and from falsely clouding complainant's title to the property. The grounds upon which this relief was sought were set out in the bill, and were, in substance, that complainant claimed to own the title to the property by deed from one Gelderman to him, dated in 1891, and title to Gelderman by *mesne* conveyance from the United States government, and that he had obtained a decree of the circuit court of Cook county establishing his title in fee simple to said lands; that on March 31, 1894, complainant enclosed the property with a fence, and on April 4, 1894, Harms removed and destroyed it; that complainant restored the fence April 7,

and on the same day Harms destroyed this fence and moved a house upon the land, which, it is alleged, was burned April 8; that Harms threatens to remove and destroy any fence which the complainant may build, and threatens to take possession and exclude complainant from the possession, and threatens to remove and destroy any house complainant may put upon the land, and complainant fears he will do so unless restrained; that Harms caused complainant's workmen to be arrested April 7, 1894, to prevent complainant from erecting a fence upon the land; that Harms is insolvent, and a judgment at law would be unavailing and uncollectible; that neither the Criminal Code nor the usual actions at law afford complainant any adequate remedy against Harms' trespasses; that Harms has no paper title to the land; that he falsely claims that he has a prescriptive title thereto by adverse possession; that Harms is litigious and quarrelsome, and has terrorized the community in which he lives; that the ordinary peace powers afford no protection against him; that he pays no attention to fines and peace bonds or judgments in trespass, and to obtain a final judgment in forcible detainer, trespass or other legal action will take a long time, owing to the congested calendar of the court, and to compel the complainant to resort to such remedies would be a practical denial of justice, during which the complainant would be deprived of the enjoyment of the land.

Upon the filing of this bill, and without notice, an injunction was issued as prayed, on April 9, 1894, and on May 7, 1894, Harms filed his answer, denying the several allegations of the bill, and particularly denying that Jacobs had obtained any decree against Harms in the circuit court, but alleging that Jacobs commenced suit under the Burnt Records act, in that court, to which he made Harms a defendant, and that he subsequently dismissed the suit as to Harms and then took a decree in his own favor. The answer expressly denies the juris-

diction of a court of equity in the case in three clauses thereof, the first denial being in the first paragraph of the answer, expressly denying that a court of equity has jurisdiction in the subject matter of the bill of complaint; the second denial being that the complainant had an adequate remedy at law; and the third being at the conclusion of the bill, stating that defendants deny that a court of equity has any jurisdiction of the subject matter of this cause or that complainant is entitled to any equitable relief, and insisting that the claims of said complainant may be properly and fully adjudicated in a court of law, and praying the same benefit from this answer as if it were a special demurrer to said bill of complaint. The answer also denies the insolvency of Harms; denies that he has trespassed upon the property; denies that he is quarrelsome or holds in defiance the writs of the courts, but alleges that he is the owner of the property and has been in possession of the same for more than twenty-five years, claiming to be the owner under a conveyance of the same from a former owner thereof, made prior to 1851.

Replication was filed to this answer, and upon the issues so joined the case was set for trial. A motion was made by Harms' representative for a continuance because his solicitor was sick and absent from the city, and because Harms was also absent, the solicitor making the motion stating to the court that he knew nothing about the case. This motion was denied, and the complainant (appellee) introduced his evidence, and two witnesses were called on behalf of the defendants on that day, which was the 13th day of June. After complainant's evidence was heard, defendants moved to dismiss the bill for want of equity, both upon its face and upon the evidence. The motion was denied. On the evening of that day an adjournment was had until the next morning, when Harms appeared and testified in his own behalf, the court having already directed that no other evidence in his behalf should be heard. After the examination of

Harms the complainant called Harms' brother for the purpose of rebutting his testimony in certain regards, when the court ordered a decree.

The decree was entered on the 15th day of June. Thereupon, and on the 29th day of June, Harms appeared before the court and made a motion to vacate and set aside the decree that was entered and to give him a new trial in the cause, and in support of that motion he filed numerous affidavits. By these affidavits it was sought to be shown that Jacobs was engaging in a multiplicity of suits against Harms in relation to the title to this land, and in suits growing out of such litigation, both civil and criminal; that Jacobs had commenced a suit in the circuit court, under the Burnt Records act, to establish title to this land, and had dismissed it on the last day of the month of March as to Harms, but had taken a decree in his own favor in relation to the land; that upon that decree as a basis of action he had gone to the land in the night time and torn down Harms' fence and put a fence around the property; that Harms had resisted this act of trespass by restoring his own fence, and in order to retain possession of the property had built a dwelling house upon the land and put his son and son's family in that dwelling house, about the 7th of April; that on the 8th of April, which was Sunday, in the afternoon of that day, Jacobs went to the property and forced Harms' son and his son's wife to leave the house, and then burned the house, and that the next morning, after so burning the house, Jacobs filed his bill alleging his possession, and obtained the injunction against Harms. The affidavits state that complainant has no title to the land, without it be a possible dower interest, which was conveyed by Katharine O'Brien to William Lill by quit-claim deed dated June 6, 1851, but that before that date Katharine O'Brien, administratrix of the estate of George O'Brien, deceased, had sold said land to Thomas Hogan, subject to her dower, by deed dated May 21, 1850, and it appears

from the records that Thomas Hogan died intestate about September 13, 1850, and that his estate was probated in Cook county. It appears from said affidavits that Harms obtained a deed from the representatives of Hogan's estate and took possession of the property in 1851 or 1852, and has been in possession ever since.

To this effect were the affidavits. The affidavit of Gary, the absent solicitor, states how the cause came to be tried in his absence and without notice to Harms; that he, Gary, was sick and unable to attend to his business, and was out of the city, and did not return until after the case was disposed of; that he did not expect the cause to be reached for trial, and did not know that it was reached until after it was disposed of.

The motion for a new trial was denied. The decree, as entered, found the premises to be in possession of complainant; that he had paid all taxes thereon; that he had fenced the land, which fence was destroyed about April 4, 1894, by defendants, and was rebuilt by complainant, and on April 8, 1894, said defendants destroyed it again, and said defendants threaten to destroy and remove any fence that said Jacobs may erect around said premises or any house he may put thereon, and that there is danger that they will do so; that said Jacobs bought said land in good faith, paying a good and legal consideration therefor; that said Jacobs has no adequate remedy at law; that none of said defendants have any title to said land or any other title whatever, and that said Harms and each and all of said defendants have no prescriptive title to said premises and have never been in possession of said land except as trespassers, and that neither he, the said Harms, nor any other of said defendants, has ever exercised any acts of ownership over said lands. It is therefore ordered, adjudged and decreed that said Henry Harms, and each and all of said defendants, and each and all of their grantees, heirs, devisees, assigns, transferees, representatives and agents, be perpetually

enjoined and restrained from interfering with the possession of said premises, or any part thereof, of the said Charles F. Jacobs, and from removing or destroying the fence erected by said Jacobs around said premises or any part thereof, and from clouding and libeling said Jacobs' title thereto, and from setting up and asserting a prescriptive title thereto. And it is further ordered, adjudged and decreed that the said title in fee simple absolute to said premises is in said Jacobs, and was so in said Jacobs at the time of the filing of the bill of complaint herein. From this decree defendants prayed an appeal to this court.

AUGUSTUS N. GAGE, for appellants:

A court of chancery had no jurisdiction of the subject matter of this suit, and the bill should have been dismissed for want of equity, for two reasons:

*First*—Because the relief sought was purely legal. *Gage* v. *Hampton*, 127 Ill. 87, and cases cited; *Stock Exchange* v. *McClaughry*, 148 id. 372.

*Second*—Because Jacobs did not have such a possession of the land as would warrant a court of chancery in entertaining the bill. *Hardin* v. *Jones*, 86 Ill. 313; *Fort Dearborn Lodge* v. *Klein*, 115 id. 177, and cases cited; *Gage* v. *Hampton, supra; Comstock* v. *Henneberry*, 66 Ill. 212, and cases cited.

The evidence herein does not sustain the allegations of the bill. *Gage* v. *Curtis*, 122 Ill. 520, and cases cited.

ALBION CATE, for appellee:

Though the legal remedy may be adequate for each single act of trespass if it stood alone, the entire wrong may be prevented or stopped by injunction. *Murphy* v. *Lincoln*, 63 Vt. 278; High on Injunctions, 724-727; *Griffith* v. *Hilliard*, 64 Vt. 644; 1 Pomeroy's Eq. Jur. sec. 245; 3 id. sec. 1357; 2 Story's Eq. Jur. secs. 928, 929.

An injunction will be awarded to prevent a threatened continuous disturbance of the possession of the rightful

owner of the land.   *Miller* v. *Burket*, 132 Ind. 469; *Owens* v. *Lewis*, 46 id. 488.

When the trespass complained of is repeated or continued, in the nature of a nuisance, or when the wrongful acts continued or threatened to be continued may become the foundation of adverse rights and occasion a multiplicity of suits to recover damages, the case presents such equitable features as to entitle complainant to the aid of an injunction.   *Mitchell* v. *Dors*, 6 Ves. 147; *Johnson* v. *Rochester*, 13 Hun, 285; *Hanson* v. *Gardiner*, 7 Ves. 305; *Musselman* v. *Marquis*, 1 Bush, 465; High on Injunctions, sec. 715.

Irreparable damage does not necessarily mean injury that cannot be compensated by money, but that sort of injury, be it great or small, that a man need not put up with.   *Wahle* v. *Reinbach*, 76 Ill. 326; *Field* v. *Barling*, 149 id. 556; *Newell* v. *Sass*, 142 id. 104.

Equity has jurisdiction to enjoin acts which amount to a continuing trespass.   *Willett* v. *Woodhams*, 1 Ill. App. 411; Hilliard on Injunctions, sec. 9; *McIntyre* v. *Story*, 80 Ill. 127; *Trustees* v. *Stewart*, 43 id. 85; Story's Eq. Jur. sec. 928, notes 2, 3; *Hanson* v. *Gardiner*, 7 Ves. 306; *Thomas* v. *Oakley*, 18 id. 184; *Railroad Co.* v. *Archer*, 6 Paige, 85; *Grant* v. *Crow*, 47 Iowa, 634.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Two questions are presented on this record, the determination of which is conclusive of this case:  First, do the facts, as shown in the record and found in the decree, give jurisdiction of the subject matter of this bill to a court of chancery and sanction a decree awarding a perpetual injunction; and second, if jurisdiction is conceded, do the averments of the bill authorize the decree as entered.   Both questions must be determined adversely to appellee.

The acts sought to be enjoined are threatened trespasses to real estate alleged to be owned by appellee, and the bill charges trespasses heretofore committed, which are found by the court. Courts of equity will interfere to restrain trespass, whether committed under the forms of law or otherwise, in but exceptional cases. These exceptions are included in two classes: First, to prevent irreparable injury; and second, to avoid a multiplicity of suits. Where application is made to a court of chancery under the first class, the facts and circumstances must be alleged from which it may be seen that irreparable mischief will be the result of the act complained of, and that the law can afford no adequate relief. A mere allegation of such facts is not sufficient to warrant a decree for a perpetual injunction in such case, unless admitted by the pleadings. The question of the existence of an adequate remedy at law, to defeat the jurisdiction of a court of chancery, may be raised by a demurrer to a bill for failing to make the necessary averment, or it may be specially set up and relied upon in the answer. Where the jurisdiction is challenged and an issue made by the answer to a bill with sufficient averments, on a hearing the evidence must sustain the averments of the bill or jurisdiction is lost. The averments of the bill in this case as to irreparable injury are sufficiently specific to give jurisdiction, and trespasses committed and threatened, and insolvency of defendants, are alleged. The answer specifically denies the defendants are insolvent and denies the jurisdiction of a court of equity, averring the complainant had a complete remedy at law. There is no finding in the decree as to the insolvency of the defendants, and the evidence shows the principal defendant, Henry Harms, is worth over $400,000, his property being chiefly in Cook county. The insolvency of the defendants is the specific fact, and only fact, averred that would give a court of equity jurisdiction to restrain trespasses because of irreparable injury. Under

the evidence in this record, on the issues as made, it is apparent the complainant had a complete remedy at law, and would sustain no damage that could not be satisfied by the judgment of a court of law, as his injuries from trespasses could be compensated in damages. *Owens* v. *Crossett*, 105 Ill. 354; *Thornton* v. *Roll*, 118 id. 350; *Poyer* v. *Village of DesPlaines*, 123 id. 111; *Chicago Public Stock Exchange* v. *McClaughry*, 148 id. 372; *Comrs. of Highways* v. *Green*, 156 id. 504.

The entire scope of the bill was for an injunction to restrain threatened trespasses. Such being its extent and purpose, the decree as entered contained, as against the defendants, a finding that the title in fee simple absolute to said premises was in the complainant at the time of filing the bill of complaint. By the bill complainant alleged he was the owner and in possession of the premises, and defendants threatened to commit trespasses thereon. By the answer defendants denied that complainant was owner of the premises, but averred the title and possession were in the defendants, and denied the threatened trespasses. The decree was broader than the averments of the bill sanctioned. No relief was asked as against a cloud on title, to give jurisdiction. The complainant must stand or fall by the case made by his bill, and the decree must conform to the allegations and prayer. *Gage* v. *Curtis*, 122 Ill. 520.

There is no averment of the bill which necessitates a discussion of the question of a resort to a court of chancery, by injunction, to prevent a multiplicity of suits.

We do not deem it necessary to enter into a discussion of the question of title and possession, as for the errors indicated the decree must be reversed and the cause remanded to the Superior Court of Cook county, with directions to dismiss the bill. *Reversed and remanded.*