## Miriam T. Cragg, Appellant, v. Salmon O. Levinson, Appellee.

## Gen. No. 13,888.

1. INJUNCTIONS—*when do not lie to restrain trespass.* A court of equity has no jurisdiction to enjoin a trespass, even where repeated trespasses have been committed and their continuance is threatened, against a single complainant by a single defendant, unless the defendant is shown to be insolvent. (Various prior decisions being discussed and considered at length.)

2. APPELLATE PRACTICE—*effect given to dictum.* A judicial dictum of the Supreme Court will not be disregarded by the Appellate Court but will be treated with respect as a deliberate expression of opinion.

Bill for injunction. Appeal from the Circuit Court of Cook

county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed June 11, 1908.

WEST, ECKHART & TAYLOR, for appellant.

ROSENTHAL & HAMILL, for appellee; CHARLES GOODMAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Cook county in chancery, sustaining a demurrer to the appellant's bill of complaint and, on her electing to abide by said bill, dismissing said bill for want of equity.

The bill was filed April 1, 1907. It alleges that on June 21, 1906, the Hartford Fire Insurance Company erected a fence on the north fifty feet of the south seventy feet of lots three and four, block eleven, in Cleaverville, in the city of Chicago and county of Cook, very close to the north boundary line of the same, and immediately thereafter, on the same day, conveyed by deed the said premises, of which it was seized in fee simple, to George L. Cragg, the husband of the complainant, who, with complainant, took possession of the same for a residence; that on June 22, 1906, certain persons, among whom was one Rosen as leader, "trespassed upon the said premises, * * * tore down and destroyed all or a large part of the above mentioned fence, * * * and that said acts caused" the complainant "great alarm, mental anguish and disquiet;" that Rosen was in the employ of a firm of lawyers, of which the defendant is a member, and that the trespass was done at the request, instigation or procurement of the defendant; that on the day before, June 21, 1906, one Becker, acting for the defendant Levinson, threatened, in the presence of several witnesses, to tear down the said fence or any fence built in its place as fast as it could be put up,

unless an irregular portion of said premises at 4053
Lake avenue should be sold to the said defendant for
$250; that it was in pursuance of said threat that the
said acts of destruction of June 22, 1906, were com-
mitted; that on June 24, 1906, George L. Cragg con-
veyed the described premises to one Atherton and the
said Atherton conveyed them to the complainant,
Miriam T. Cragg, who is now the owner in fee simple
of said premises, which are situated at 4053 Lake
avenue; that on or about September 7, 1906, a gang of
unknown persons, acting at the procurement of the
defendant and as his agents, trespassed on the prem-
ises of complainant; that the said Rosen appeared and
assumed charge of said gang; that the said gang per-
sisted in their acts of trespass and violence despite
warnings and appeals informing them that the com-
plainant was very ill on the premises and might be
greatly injured by the noise and confusion resulting
from the acts of trespass; that on September 14, 1906,
said Rosen, accompanied by one McCall and others,
again trespassed on the premises of the complainant,
at the procurement of Levinson, and that Levinson has
often trespassed on said premises by driving an auto-
mobile across a strip of the complainant's premises
at and near the line where they meet the defendant's
premises; that said defendant, as the complainant is
informed and believes, threatens and intends to con-
tinue to commit or repeat the commission of the acts
of trespass in driving an automobile over the strip in
question and tearing down any fence that may be
built near the boundary line where said fence would
interfere with the trespass on the strip in question by
an automobile; that if not enjoined therefrom, the de-
fendant will do said acts and carry into effect said
threats, to the grievous wrong of the complainant and
the irreparable injury of her property in that said
acts if continued will have a tendency (a) to destroy
and obliterate the boundaries of said premises; (b)
to greatly diminish the rental and market value of

said premises; (c) to gain. for the defendant a prescriptive right or easement in favor of his premises, ultimately imposing a permanent burden or servitude upon the premises of the complainant, or, in the alternative, force her to institute many suits at law; (d) to prevent the complainant from using a strip of her said premises near the defendant's premises, either for a safe walk or for adornment of her premises by growing grass, etc. Such forced loss of the use of part of the complainant's premises would be an injury for which recoverable damages would in no sense adequately compensate her; that if the defendant is not restrained by injunction, he will continue the acts of trespass before described, which will be to the disturbance of the public peace and the peril of the complainant, and that this will be a public nuisance, injuring the public, but mostly the complainant; that the complainant's remedies at law are totally inadequate to secure to her the quiet and peaceable use and enjoyment of her premises against the said acts of trespass and violence of the defendant; that the complainant delayed bringing her bill only on account of illness, aggravated by the excitement caused by defendant's acts; that the complainant "brings her bill for no other purpose whatsoever than to seek protection that she may use her premises in quiet and safety."

The prayer of the bill is that the defendant may be enjoined "from doing or in any manner whatsoever inducing others to do the acts in the bill complained of, or any of them, and more especially from driving upon, over or across, or in any manner trespassing upon the said premises of the complainant either with an automobile or with any other vehicle, or in any manner whatsoever, and from interfering with the complainant or her servants or attorneys in any manner whatsoever to prevent them from erecting a fence upon said boundary line or upon said premises of the complainant near said boundary line, and from destroying any fence either in part or in whole, or in

any manner whatsoever inducing any other person to destroy any part or all of any fence which the complainant may erect either upon said boundary line or upon her own premises near said boundary line," and for general relief.

To this bill the defendant filed a general and special demurrer. The special grounds which need notice, however, are all equivalent to an objection which may be made under the general demurrer—that the bill does not state such a case of trespass, actual or threatened, as equity will take jurisdiction of and enjoin.

The sustaining of the demurrer and dismissal of the bill raises, therefore, the question whether this proposition is incorrect.

It is conceded by appellant that in Illinois there are decisions by the Supreme Court which would sustain it. These decisions hold that as a general rule a court of equity has no jurisdiction to enjoin a trespass even where repeated trespasses have been committed and their continuance is threatened against a single complainant by a single defendant, unless the defendant is shown to be insolvent. Commissioners of Highway v. Green, 156 Ill. 504; Harms v. Jacobs, 158 Ill. 505.

It is also conceded by appellants that there are opinions of the same court in other cases containing statements of the same rule, or of some portion thereof. In these cases counsel insist, however, that the statements were not necessary to the decisions and were therefore *obiter dicta*. Such cases are: Poyer v. Village of Desplaines, 123 Ill. 111; Chicago Public Stock Exchange v. McClaughry, 148 Ill. 372; Chicago General Railway Co. v. C., B. & Q. R. R. Co., 181 Ill. 605; Lloyd v. Catlin Coal Co., 210 Ill. 460; City of Chicago v. C. C. Ry. Co., 222 Ill. 560.

It is manifest in some of these last named cases that if the precise statements alluded to, such as that the danger of multiplicity of suits, is not a sufficient cause for the interference of equity to prevent the

repetition of a trespass by the same person, when the threatened injury is capable of measurement in damages, are *dicta,* they are at least judicial *dicta* as that phrase is defined in Law v. Grommes, 158 Ill. 492, that is, expressions of opinion upon a point deliberately passed on by the court. · They should certainly be treated by us with respect.

Of the cases, however, of Harms v. Jacobs (*supra*) and Commissioners of Highways v. Green (*supra*) it is conceded that they are in point, and that they hold as the gist of their decisions that equity will not enjoin repeated acts of trespass committed and threatened against a single complainant by a single defendant, unless that defendant's insolvency is shown. The contention that these decisions are not binding on us in this case rests wholly on the opinion of the appellant's counsel that they were not well-considered, and that they are inconsistent with other and later utterances of the Supreme Court.

The assumption that these cases were ill-considered we cannot make. We see nothing to support it. The opinions in them are not long and they do not cite a multitude of cases. The cases which they do cite are from Illinois, and it is claimed by the appellant's counsel that they are not directly in point. But the question at issue was fairly met and plainly decided, and in Comm'rs of Highways v. Green the court says the rule announced will be found on examination to be well sustained by text writers and the decisions of the best courts of last resort. We think this is not an overstatement.

The rule which has been generally followed is that stated by Chancellor Kent in Jerome v. Ross, 7 Johnson Chancery, 315. "It is not sufficient" (to warrant the interposition of equity) "that the act be simply *per se* a trespass, but it must be a case of mischief and of irreparable ruin to the property in the character in which it has been enjoined. In all other cases, the common law remedy is deemed to be adequate and

perfectly competent to give compensation as well as to deter and prevent the repetition of the trespass by the exemplary damages which it will inflict.''

The second contention of the appellant, that the Jacobs case and Green case are virtually, although not expressly, overruled by subsequent decisions of our Supreme Court, deserves more serious consideration.

From the standpoint of reason and convenience there is much to say in favor of using the jurisdiction of chancery in cases of quarrels and trespasses between neighbors in such a way that a harassing and annoying series of suits may be prevented, that peace may be preserved and that injuries which, if not irreparable are at least difficult of computation in damages, may be forbidden and avoided, even though all this be done at the expense of forfeiting a jury trial. These considerations were strong enough to lead in 1893 a distinguished judge of the Appellate Court of the second district to depart, as we think, from the established doctrine which was afterwards more explicitly laid down by our Supreme Court in the cases we are discussing. Stroup v. Chalcraft, 52 Ill. App. 608.

If, therefore, through the examination of the cases cited to us by the appellant's counsel, we had formed the opinion that the Supreme Court had intended, in other cases, to depart at all from the doctrine which they had stated in the Jacobs and Green cases, we should, even though these cases had not been expressly and by name overruled, have seriously considered whether the rules laid down by Judge Green in Stroup v. Chalcraft were not worthy of adoption by us.

But we cannot come to that opinion. In one case, Village of Itasca v. Schroeder, 182 Ill. 192, strongly relied on by appellant as showing that the Supreme Court had later come to a different conclusion from that which they had announced in Commissioners of Highways v. Green, the latter case is cited with ap-

proval. And in the Itasca case and in all the others from the Supreme Court cited to us by the appellant's counsel, there is an element justifying equitable interference, even though it was intended to adhere strictly to the rule enunciated in the Jacobs and Green cases. Thus where grown trees were to be removed—Village of Itasca v. Schroeder (*supra*), City of Mt. Carmel v. McClintock, 155 Ill. 608; or where a sidewalk was to be laid out, taking a strip off a man's dwelling house, City of Joliet v. Werner, 166 Ill. 34; or where there was a removal of soil and excavation and interference with a water supply, Edwards v. Haeger, 180 Ill. 99; or where irreparable injury was threatened by the deflection of a river which would sweep away land, Cobb v. I. & St. L. R. R. Co., 68 Ill. 233; or where incorporeal rights were to be taken away, Field v. Barling, 149 Ill. 556; or a continuing nuisance from a permanent structure was to be anticipated, Wahle v. Reinbach, 76 Ill. 322, Newell v. Sass, 142 Ill. 104; an injunction has been sustained.

But we do not think these cases overrule or modify the strict rule laid down in the Jacobs case and Green case as applicable to a case like the one at bar.

The judgment of the Circuit Court sustaining the demurrer and dismissing the bill is correct and is affirmed.

*Affirmed.*