JOHN DAUM

*v.*

IRA COOPER.

*Opinion filed February 17, 1904—Rehearing denied April 12, 1904.*

1. DRAINAGE—*right of party to change natural water-course on his own land.* One may change the course of a natural water-course on his own land if he restores it to the original channel before it reaches the lands of another, provided such change does not cast upon the lands of an adjoining owner water not naturally flowing there.

2. INJUNCTION—*when digging of drainage ditch will not be enjoined.* A court of equity will not enjoin the construction of a ditch upon defendant's own land where actual experience for many years, under practically the same conditions, has demonstrated there is no reasonable ground to fear complainant will suffer material injury.

APPEAL from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

GEORGE D. O'BRIEN, and HENRY S. DIXON, for appellant.

D. W. BAXTER, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by the appellant, praying that appellee be enjoined from cutting a ditch in his (appellee's) farm and causing water to flow out of its natural course to and upon the lands of appellant. The cause was heard upon bill, answer, replication and proofs produced in open court, and a decree was entered dismissing the bill for want of equity, from which decree this appeal has been perfected.

A motion submitted by the appellee to dismiss the appeal for want of jurisdiction was reserved to the hearing, and will be overruled for reasons that will be made apparent in the course of the opinion.

The appellant and the appellee are the owners of adjoining farm lands in the town of Alto, in Lee county. The lands are all situated in section 29, town 39, north, range 2, east. The appellant is the owner of the west half of the south-east and the east half of the south-west quarter of said section, and the appellee's lands are described as the east half of the north-west and the north-east quarter of the said section. Appellee's dwelling is located on the north-east corner of the west half of the north-east quarter, which tract, together with the eighty-acre tract immediately west of it, will be designated hereafter as the appellee's home place. A public highway runs east of this home tract of appellee's land, dividing it from the east half of the north-east quarter, which latter tract will be, for convenience, hereafter called the "Rody place." This highway runs south along the east side of the lands of the appellant. There is a highway

along the north side of appellee's lands.   The following
plat will aid to a clearer understanding of the location
of these lands and of what will hereafter be said in this
opinion as to ditches and water-courses:

Two small water-courses ran from the Rody place
across the highway westwardly into appellee's home
tract, and another water-course entered his home tract
near the center thereof, on the north side.   The natural
flow of the water from all of these water-courses was to
the west and south-west.   It seems from the testimony
that the water did not flow in any well defined channels
in the westerly or south-westerly portion of appellee's
home place, but that the land there was low and flat and
the water found its way in slight depressions to the west
and south-west.   The appellee contended, and the testi-
mony in his behalf tended to show, that a portion of this
water flowed from his land on to a portion of the north-
western corner of the lands of the appellant, but the

testimony in behalf of the appellant tended to show that the water would in a state of nature flow across appellee's west line of his home place at points from twenty to sixty rods north of the north-west corner of the lands now owned by the appellant. The north-west portion of appellant's land and the south-west portion of appellee's land were flat and low and wet, and the truth of either contention could not be well declared from the proof.

The lands belonging to the appellant formerly belonged to one Jeptha Mitten. In the year 1871 the appellee and the said Jeptha Mitten, by mutual consent and agreement, constructed a line of ditches beginning on the west line of appellee's home place about one hundred rods north of his south-west corner and extending thence south along the west line of the appellee's home place to the north-west corner of Mitten's land, (now appellant's tract,) thence south along the west line of Mitten's land a distance of eighty rods. Appellant became the owner of the Mitten land in 1875.

In 1886 the appellee claimed that the highway commissioners, in grading and improving the highways near the north-east corner of his home place, had obstructed the natural flow of the water coming from the east and north, and caused the same to flood his door-yard and premises about his house in the north-east corner of the home tract. This complaint on the part of the appellee resulted in an agreement with the commissioners of highways, made in 1886, under which the appellee was permitted to construct, and did then construct at his own expense, a ditch in the west "bench" of the highway, which ran north and south, beginning in the west bench of the said highway at the north-east corner of his home place and extending from thence south to within about four feet of the south line of his land. This ditch intercepted the waters which would otherwise flow on the north-easterly portions of his home place because of the construction of the grade of the highway, and also the

waters which would otherwise flow on the easterly part of his home place from the two water-courses coming from the Rody place, and would conduct all such water down the ditch to the south end thereof, near the south-east corner of his home place. The appellee at the same time caused a ditch to be dug on his own land in the south part of his home place, from the south end of this ditch on the west side of the highway, west to his own ditch near the south-west corner of his home place. These ditches were constructed in 1886, and conducted the water which otherwise would have come upon the home place upon the north-east corner thereof, and from the Rody place, south in the ditch in the highway to the ditch leading west on his own land, thence in the latter ditch west to the appellee's ditch on the west line of his home place and within a few feet of the north end of the Mitten ditch, into which latter ditch the water would then be conveyed by the ditch on the west line of appellee's land.

In 1888 the Inlet Swamp Drainage District was organized, and a number of ditches were dug for the purpose of draining the lands west and south of that of these litigants. The plans of the drainage district contemplated the construction of a ditch from the north main ditch of the drainage district almost due north-east to the south-west corner of appellee's home farm, which was also the north-west corner of Daum's farm and also the junction of the Cooper and Mitten ditches, and a few feet south of the western outlet of the ditch constructed by the appellee from the north and south highway in the south part of his home place to the south-west corner thereof, as before described. The appellant interceded with the commissioners of the drainage district and induced them to abandon the proposed ditch to the south-west corner of appellee's land, and arranged with them to cut the ditch eastwardly to the south end of the Mitten ditch, and to secure this action on the part of

the commissioners the appellant agreed with them that he would clean out the Mitten ditch and keep it in good condition to conduct the water which came into it. After the construction of the Inlet drainage district ditch in the year 1888 until the year 1903 all of the waters from appellee's farm came, by means of the ditch on the west side of his home place and the ditch from the highway on the south side of his place, into the Mitten ditch and from thence to the ditch of the drainage district. The position of appellee is, he has the perpetual right to discharge the water from his ditch into the Mitten ditch on appellant's land and to have the same flow therein, and it is for this reason we hold a freehold is involved.

In the year 1903, as the result of litigation between the commissioners of highways (the appellant being a member of the board) and the appellee, the commissioners, on payment of $250 to appellee, were authorized to close appellee's ditch in the west bench of the north and south highway and to enter upon his lands where the two water-courses which came through the Rody place entered his home lands and open a way from the culverts for the water-courses to enter on his land, and also to carry the water which had been diverted on to appellee's home place at his yard, in ditches along the north side of the east and west highway to a culvert, thence through the culvert into and upon the appellee's land about sixty rods west of his house, and to there open a way in appellee's land a distance of twelve feet from the highway, in which to receive the water coming from the waterway under the culvert in the north and south highway in order the same might flow on to appellee's land. The commissioners of highways constructed a culvert in the east and west highway at the proper point, made a ditch along the north side of that road and opened a way in appellee's land for the water to be conveyed to and upon it from the highway. The commissioners also made two culverts where water-courses which came from the Rody

place crossed the highway running north and south, and in appellee's field west of the more southerly of the culverts the commissioners opened a way for the passage of the water into appellee's field, where it had previously gone in a state of nature. The appellee then determined to cut a ditch in his own land to lead from the natural water-course which came from the Rody place through the more southerly culvert in the north and south highway, south to the ditch before mentioned in the south part of his own land, which led to the west and connected with the Mitten ditch at the south-west corner of appellee's land and near the north-west corner of the land of the appellant, and to construct a dam or obstruction on his own land in the bed of the natural water-course from the Rody place through the culvert in the north and south highway for the purpose of turning the water coming in such water-course south into the proposed new ditch, whence it would reach the ditch in his land near the south line thereof and from thence be conducted to the west into the Mitten ditch. The appellee, in pursuance of such plan, began to cut the ditch on his own land. The appellant thereupon filed this bill in chancery praying for a writ of injunction restraining the appellee from completing the ditch and from building any dam or barrier that would obstruct the natural flow of the water on his (appellee's) land or divert the flow thereof from its natural course, and from in any manner interfering with the natural water-courses extending across the lands of the appellee west of the north and south highway so as to cause any water to flow on the lands of the appellant.

We think the chancellor correctly ordered the bill to be dismissed. A proprietor of land may change the course of a natural water-course within the limits of his own land if he restores it to the original channel before the lands of another are reached, provided in changing the course of the stream he does not cast upon the lands of an

adjoining proprietor water which would not in a course
of nature flow upon such adjoining premises. (28 Am. &
Eng. Ency. of Law,—1st ed.—p. 982.)

It appeared from the testimony of a number of wit-
nesses who testified in behalf of the appellee, that the
manner in which the appellee proposed to dig the ditch
and control the flow of the water coming upon his own
land was necessary to the proper tillage of his lands,
and we find nothing in the evidence to controvert this
position. There is no proof in the record that appellant
has ever suffered any appreciable damage from water
coming from appellee's ditches, though the only ditch
from which waters could come to the injury of the ap-
pellant, viz., that running east and west in appellee's
land from the south-east corner at the highway to the
Mitten ditch at or near the south-west corner, had been
there more than seventeen years before the bill was filed.
The ditch which it was sought to enjoin appellee from
constructing would not, it is clear, bring as great a quan-
tity of water into this east and west ditch as had been
conducted to it by the ditch along the west side of the
highway during that period of seventeen years, for dur-
ing that time the ditch along the highway extended at
least a hundred rods further north than did the ditch
which appellee was engaged in digging when enjoined,
and consequently gathered and conveyed more water
than would the proposed new ditch in appellee's field.

It was proven that since the issuance of the injunc-
tion the appellee had cut a ditch from the opening made
by the commissioners of highways from the culvert in
the highway at the north side of the home farm of the
appellee to the ditch running east and west in the south
part of his farm, from the highway to the Mitten ditch.
It may be that this latter constructed ditch would bring
some more water into the east and west ditch than had
previously flowed therein, but the additional quantity,
if any, would only be such as would fall upon his lands,

for the ditch which existed along the highway along the east side of appellee's home place intercepted and conveyed the water from all the water-courses that flowed on to the home place. It was also shown that the appellee had constructed a strong embankment on his land on the south bank of the east and west ditch where this new north and south ditch emptied therein, and no reasonable grounds for fear of an overflow or the breaking of the bank of the ditch were disclosed by the proof.

There is no proof in the record that the appellant has ever suffered any appreciable damages from the efforts of the appellee to drain his lands. It was proven that at the north-west corner of the appellant's land, near the point where the appellee's east and west ditch intersects the ditch running north and south on the west side of his home place, the water had washed the banks of the ditch to such an extent as to loosen and cause to fall some of the posts of appellant's fence, and that appellant's cattle at one time escaped through the opening thus made; but we think it is well established by the proof that the appellant failed to comply with his contract to keep the Mitten ditch cleaned out and open, and that the injury to the bank at the north-west corner of his place was attributable to the fact that obstructions in the Mitten ditch caused the water to collect and stand in the ditch at appellant's north-west corner and to soak and loosen the soil and caused it to fall into the ditch, or "cave in," and that this neglect of the appellant caused the injury to his fence.

The appellant produced testimony to the effect that the water had begun to cut or wash away the bank of appellee's ditch on his land near the highway at the southeast corner of his home place, and also at another point still further west in the same ditch. The wash or break in the bank at the east end of this ditch near the highway was described as a hole in the bank eighteen inches or two feet in width, but it was not clear that the wash

or break had reached appellant's land. There was testimony tending to show this hole was within the limits of the highway, and if so, it would be east of the terminus of the ditch that the appellant sought to have the appellee enjoined from cutting, and hence no further injury could occur from it. The appellee testified that the only hole he knew of was outside of his fence, and that it had not been caused by the action of the water but had been cut by the appellant. The testimony as to the washing of the bank at the point further west on the ditch was, that the dirt had been soaked or washed away sufficiently to expose the roots of the hedge fence. There was no proof that any water had passed from the ditch at either of the points into or upon the lands of the appellant. The opinion was expressed by witnesses for the appellant that if the water continued to flow in the ditch, the banks, if not protected, would eventually be washed away, and that the water might then reach and damage the lands and crops of the appellant, but on cross-examination these witnesses conceded that if reasonable and proper care was taken to keep the ditches clean and the banks and embankments repaired the danger of injury to the appellant could be averted. The fact that the water had passed though this ditch for the period of more than seventeen years without appreciable injury to the walls of the ditch or the lands of the appellant, no doubt had great weight to convince the court there was little reason to apprehend injurious results in the future. The appellee testified that he intended to give careful attention to the banks and embankments of his ditches, and, if necessary, to support and repair any breaks that might be developed, with plank or stone, and to keep the ditches clean and open to the full extent thereof. The chancellor, it seems, was fully justified in concluding there was no reasonable grounds for the apprehensions of the appellant that he would suffer any immediate injury. The apprehensions of injury and dam-

age to lands in the future were merely conjectural and not at all probable.

The chancellor was fully justified in concluding there was no well grounded apprehension of immediate injury or damage. Actual experience of many years had demonstrated that there was no reasonable ground to fear that the appellant would be irreparably damaged, either immediately or in the future. Under circumstances similar in all respects we have uniformly held that the extraordinary restraining power of a court of equity should not be exercised. *Thornton* v. *Roll,* 118 Ill. 350; *Wilson* v. *Bondurant,* 142 id. 645.

The decree will be affirmed.                    *Decree affirmed.*