STEPHEN COX *et al.* Appellees, *vs.* RANSOM DEVERICK *et al.* Appellants.

*Opinion filed February 16, 1916.*

1. DRAINAGE—*act of 1889, relating to drains built by mutual agreement, does not abridge common law easement.* At common law the owner of the dominant heritage has a right to have the surface waters flow from his land over the lands of the servient heritage as they would naturally flow, and the act of 1889, relating to drains constructed by mutual agreement, was not intended to restrict the rights of drainage as they existed at common law but to enlarge them.

2. SAME—*act of 1889 applies though drain was constructed in a swale.* The act of 1889, which prohibits the closing up or obstruction of a drain which has been constructed through lands by the mutual license, consent or agreement of the owners, applies although the drain is constructed in a swale.

3. SAME—*act of 1889 makes right of drainage permanent one.* The intention of the act of 1889, relating to drains constructed by mutual consent or agreement of the land owners, was to make the right to the unobstructed flow of water through the ditch a permanent one, passing with the land as an incident of ownership.

4. SAME—*owner is not necessarily obliged to bear all expense of keeping his portion of a ditch unobstructed.* The distribution of the expense of keeping clear and free from obstructions a drain constructed through several tracts of land by the mutual consent or agreement of the owners must depend upon the facts of each particular case, and it is not necessarily just or equitable to require each owner to bear the expense of keeping free from obstructions the portion of the drain on his own land.

APPEAL from the Circuit Court of Jasper county; the Hon. THOMAS M. JETT, Judge, presiding.

DAVIDSON & FITHIAN, and FITHIAN & KASSERMAN, for appellants.

ISLEY, JACK & ISLEY, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellees, Stephen Cox and his children, filed their bill in the circuit court of Jasper county for a mandatory injunction commanding the appellants, Ransom Deverick and Otto Crandall, to remove a dam or obstruction alleged to have been placed by them in a common water-course or ditch. The bill alleges that the appellees are the owners of eighty acres of land north of and adjoining forty acres owned by appellant Deverick and in the possession of appellant Crandall as tenant; that beginning at the north side of appellees' land and extending south to and across Deverick's land there is a natural swale, through which water has always passed from the lands of appellees across those of appellant Deverick and thence east to a slough near the southeast corner of the section in which the lands of appellees and appellant Deverick are situated; that the said swale was many years ago improved by the owners of the lands through which it runs digging a ditch along the same from the north side of the lands of appellees south across the lands of appellant Deverick and thence east to the slough; that said ditch was made more than thirty years ago and at least five years prior to 1889; that on September 5, 1913, appellants erected a dam across said ditch at the south line of appellees' land so as to prevent the proper flow of water therein, and that the damages occasioned thereby are continuous and recurring and not susceptible of reparation in an action at law. The answer denies the existence of the swale alleged in the bill, or that there is or ever was an artificial ditch as alleged, or that

appellants have erected any dam in such ditch. The mat-
ter came on for hearing before the court and the temporary
injunction theretofore issued was made perpetual. This
appeal followed.

The principal contention made is that the decree is not
supported by the evidence.

The lands of appellees and appellants are located in
section 8 of township 7, north, range 14, west, in Jasper
county, appellees owning the northeast quarter of the south-
west quarter and the southeast quarter of the northwest
quarter of the section, and appellants owning the southeast
quarter of the southwest quarter of the section. The evi-
dence on the part of appellees tends to prove that before
this land was improved this part of section 8, and the north
part of section 17 adjoining it on the south, was flat, level
land; that there was a natural swale extending north and
south through about the center of the lands now owned by
appellees and appellants, with a fall from the north line of
appellees' land to the south line of appellants' land (a dis-
tance of three-fourths of a mile) of about five feet; that
the swale then turned to the east and extended along and
south of the section line between sections 8 and 17 to a
point at or near the southeast corner of said section 8,
where it joined a natural water-course which conducted the
waters finally into the Embarras river; that some time be-
tween the years 1871 and 1874 the owner of the lands now
owned by appellees, together with the owners of the other
lands through which the swale extended, completed an ar-
tificial ditch, beginning at the north side of appellees' lands
and extending thence south through those lands and the
lands of appellants and then east to a point at or near the
southeast corner of the section; that this ditch was made
by plowing a furrow with a two-foot plow for the purpose
of facilitating the flow of the water; that the ditch was
constructed along the lowest line of the swale and in the
center thereof; that at various times since its construction

the ditch has been repaired and cleaned out by the various owners of the lands through which it extends; that in 1893 a number of those who were interested in maintaining the ditch and keeping it free from obstructions combined their efforts and cleaned the ditch out thoroughly across the lands of appellees and the land now owned by Deverick; that one Layman, who owned the land in section 17 immediately south of the lands of appellant Deverick, objected to them going upon his lands to clean out the ditch, for the reason that one Calvert, who owned land between Layman's land and the outlet of the ditch, refused to allow them to go upon his land for the purpose of cleaning out the ditch; that Layman thereafter, during the same year, cleaned out the ditch across his land, and it appears that for at least forty years there has been an artificial ditch through the land owned at that time by Calvert; that in 1913 appellants cleaned out the ditch across their lands up to a point within four or five rods of the line between the lands of appellants and the lands of appellees; that above that point appellants filled in the ditch; that along the line between the lands of appellees and the lands of appellants there is a ridge, referred to by the witnesses as a fence-row, composed of earth, which ridge is, according to the testimony, approximately twelve inches above the surface of the surrounding land; that the ditch along this swale or depression extended through this ridge or fence-row; that appellants, in filling up the ditch, built the dam to the height of the ridge or fence-row and approximately twelve feet square, constructing it of such material as to make a permanent obstruction and one which could be removed only with difficulty; that by reason of this obstruction the lands of appellees had been overflowed, because the water was thereby prevented from flowing off appellees' lands through the usual outlet.

A surveyor, who had formerly been county surveyor of Jasper county, testified that he had gone over this ground

272 – 4

and taken levels along the line of this ditch; that the ditch is located in the center of a natural swale; that the ground slopes up from the sides of the ditch and it is the natural course for the water to take in flowing from the lands of appellees; that from the north line of the lands owned by appellees to the end of this ditch at or near the southeast corner of said section 8 there is a fall of 10.40 feet on the natural surface of the ground, and a fall of 12.30 feet from the natural surface of the ground at appellees' north line to the bottom of the ditch at the section corner.

The testimony on the part of appellants is somewhat conflicting. Some of the witnesses testified that the natural flow of water was not south from the lands of appellees over the lands of appellants, but was to the west to another slough or branch located about twenty-eight rods west of the west line of appellees' lands, or to the east to the public highway extending north and south along the east side of section 8. Some stated that there had never been any artificial ditch across the lands of appellants until the one constructed there by appellants in 1913, while others testified to the existence of a ditch there prior to this time, one of the witnesses testifying to practically the same facts related by the witnesses for appellees as to the cleaning out of the ditch through the lands of appellees and the lands of appellants in 1893 and to the stopping of the work at the Layman farm.

The proof clearly preponderates in favor of appellees as to the existence of a swale from the north side of their lands to the south line of the lands of appellants and thence east to a point at or near the section corner and thence southeast to the Embarras river, and to the fact that prior to 1874 an artificial ditch was made and completed along the center line of this swale for the purpose of facilitating the flow of the water, and that this ditch has been repaired and cleaned out periodically by the parties interested up until the present time.

Appellants insist that it is uncertain whether appellees are seeking to recover upon the theory that appellants have obstructed a natural water-course, or upon the ground that they have violated the provisions of an act passed in 1889 legalizing drains theretofore or thereafter constructed by mutual license, consent or agreement. (Hurd's Stat. 1913, p. 981.) Section 1 of the said act of 1889 is as follows: "Whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein." Section 3 of the act provides that whenever drains have been constructed in accordance with the act, none of the parties interested shall, without the consent of all the others, fill up the same or in any manner interfere with it so as to obstruct the flow of water. It is clear that the bill was filed upon the theory that appellees are entitled to the benefit of the provisions of this act. It is immaterial whether or not the ditch here involved was constructed along the line of a natural water-course. It is none the less such a ditch as is contemplated by this act. The proof shows that this land is a flat prairie. While the swale described by the witnesses constitutes·a natural outlet, the construction of the ditch facilitates the flow of the water in times of freshets, and is as much for the benefit of the lands which it thus assists in draining as if it had not been constructed along the line of a natural swale.

This statute does not restrict or abridge the rights of drainage as they existed at common law but its purpose is to enlarge those rights. (*Wilson* v. *Bondurant,* 142 Ill. 645; *Wessels* v. *Colebank,* 174 id. 618; *Ribordy* v. *Murray,* 177 id. 134.) By the common law the owner of the dominant heritage has a right to have the surface waters flow from his land over the lands of the servient heritage as they would naturally flow, and as this statute is intended to enlarge those rights of drainage, it would. seem that it was the intention of the legislature that in cases where the owners of such lands have constructed a ditch through their several tracts to carry off the water, the right to maintain the same and to have the water flow through it unobstructed should be a permanent one and pass with the land as an incident of ownership. *Wessels* v. *Colebank, supra.*

Appellants in effect admit that the dam complained of was placed across a natural outlet, as they concede that if the court should find that it was constructed any higher than the natural surface of the ground it should be removed to that extent. As has been stated, the proof not only shows this dam to have been placed in a natural swale, but also shows it to have been placed in a ditch which had been constructed more than forty years ago by mutual license of the owners of the adjoining lands through which it passed and has since been kept in repair and maintained by such owners, thus bringing it. clearly within the provisions of the act of 1889.

The decree of the court restraining the appellants from further filling or obstructing the ditch, from continuing to maintain the dam or obstruction placed by them in the ditch so as to prevent the usual flow of water therein, and from hindering or preventing the appellees from going upon the land of appellants to remove such obstructions as may arise, and in ordering that appellees are entitled to have the waterway in question kept open as it was originally opened for the purpose of carrying water that comes upon the land of

appellants through the waterway and that it shall not be obstructed, that the free passage of water therein shall not be interfered with on the part of appellants, that any embankment placed in said waterway shall be removed by appellants within twenty days, and that a mandatory injunction should issue as directed, was proper and was warranted by the law and the evidence.

Appellants complain, however, that that part of the decree commanding them to keep the ditch free of obstructions as it was prior to the erection of the dam in question was improper and erroneous. This ditch was constructed and is maintained for the benefit of the lands which it drains. It is not necessarily an equitable division of the burden of maintaining such a ditch once it has been constructed and keeping the same free from obstructions, to impose upon the several owners the obligation of maintaining and keeping in repair that portion of the ditch extending through their premises. If one be the owner of the servient estate the ditch may be constructed partially for the benefit of his lands and partially for the benefit of the dominant estate, or it may be constructed solely for the benefit of the dominant estate. The distribution of the burden of maintaining the ditch must necessarily be governed by the facts in each particular case. It does not appear from the proofs in this case that it would be equitable to require appellants to maintain that portion of the ditch extending through their premises. Indeed, that question was not an issue.

The decree will be modified by striking therefrom the following words: "and that they, the said defendants, may be commanded to keep said ditch free of obstructions as it was prior to the erection of said obstruction," and as so modified the decree of the circuit court is affirmed.

*Decree modified and affirmed.*