Fred Savoie, Appellant, v. Town of Bourbonnais, County of Kankakee et al., Appellees.

Gen. No. 10,382.

Opinion filed February 24, 1950. Released for publication March 15, 1950.

JOHN H. BECKERS and HERMAN W. SNOW, both of Kankakee, for appellant.

DYER & DYER, STREETER & NICHOLS, and JOSEPH J. TOLSON, all of Kankakee, for certain appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiff, Fred Savoie, is appealing from a judgment of the circuit court of Kankakee county dismissing his complaint for damages and for a mandatory injunction to compel defendants to repair and maintain a drainage ditch, which had diverted waters from flooding plaintiff's land. The defendants designated in the complaint include the Town of Bourbonnais, its former highway commissioners, Charles De Long and Victor Fraser, individually and officially; the County of Kankakee, its superintendent of highways, Harold D. Tyson, individually and officially; and the adjoining landowners, Didier Brosseau and Edwin S. Hamilton.

In determining whether the circuit court erred in holding that the complaint failed to state a cause of action, it is incumbent upon this court to adjudge whether any of the defendants owed plaintiff a duty to maintain this drainage ditch under any legal theory.

The uncontroverted facts appearing in the pleadings are that plaintiff owns an 80-acre tract of land immediately south of the land of defendant Brosseau, and southwest of the property of defendant Hamilton. The Hamilton and Brosseau tracts are adjacent to each other, and immediately north of them is a public high-

554

way running east and west. Prior to 1893, a natural watercourse crossed this highway through a culvert in a southeasterly direction into the Hamilton lands, where it then flowed southwesterly into the property of defendant Brosseau, and thence in a southerly direction into plaintiff's lands until it emptied into Soldier Creek, a stream flowing through the tracts of plaintiff and defendant Hamilton.

In November 1893, the Town of Bourbonnais purchased a right-of-way running north and south from the public highway to Soldier Creek, over a 16½ foot strip off the west side of the Hamilton land, and off the tract directly south of it, which belonged to certain unknown owners. The highway commissioner of the town, apparently with the consent of the former owners of the Hamilton and Brosseau lands, constructed a ditch on this strip, which was maintained for some 40 years by the highway commissioners. Waters accumulating north of the highway were drained through the ditch into Soldier Creek, and no longer flowed through the natural watercourse, which had periodically flooded plaintiff's land.

It is alleged that on or about 1935, the county board of supervisors of Kankakee undertook to take over the highway as part of the system of state aid roads, and that since then both the town and the county have refused to maintain the ditch. As a result, it has become filled with debris, and the waters have overflowed several times a year across plaintiff's land, creating gullies and washing away the top soil, thereby causing irreparable damage, for which plaintiff seeks damages and a mandatory injunction to compel defendants to repair and maintain the artificial ditch.

In the four counts of the complaint, plaintiff advances essentially two theories for imposing liability upon the various defendants. The first is based upon a violation of plaintiff's prescriptive rights, and the second is predicated upon the existence of a mutual

drainage ditch, and certain obligations thereunder, inuring to plaintiff's benefit.

Count 1 is directed against the Town of Bourbonnais and the highway commissioners, and asserts that having constructed the ditch, the town and commissioners were under a duty to keep it in repair. Moreover, inasmuch as the water had been diverted by the artificial ditch for over 40 years, plaintiff alleges that he acquired a prescriptive right to have his lands released from the burden of the waters that formerly passed over it, and that this right is enforceable by a mandatory injunction.

The second count asserts that the alleged agreement between the owners of the Brosseau and Hamilton lands and the highway commissioners created a mutual ditch under the Act of 1889, and that it was the duty of the parties thereto, and their successors in title to keep the ditch in repair. Plaintiff insists that the highway commissioner has the same obligation thereunder as any private landowner, since maintenance of the ditch is a private rather than public duty, and that defendants' failure to perform these contractual obligations may be enjoined by the mandatory injunction.

Counts 3 and 4 reallege the allegations of count 1, and seek damages from the highway commissioner, inasmuch as it was his duty under the statute to keep the roads in his district in repair (ch. 121, par. 56, § 50, subpar. (b) (6), Ill. Rev. Stat. [Jones Ill. Stats. Ann. 120.058, subpar. (b) (6)]), or in the alternative, from the county superintendent under his statutory authority to open ditches (ch. 121, par. 8, § 8, subpar. (D) [Jones Ill. Stats. Ann. 120.008, subpar. (D)]), and from the other defendants under their contractual obligations.

Separate motions to dismiss the complaint were filed by the county, the town, the town highway commissioners, and the county superintendent of highways. Defendants Hamilton and Brosseau adopted the motions

556

of the other defendants insofar as they applied to their respective cases.

The trial court allowed the motions to dismiss on the ground that the complaint did not state a cause of action against any of the defendants.

The salient issue presented by this appeal is whether the complaint establishes a duty on the part of any of the defendants to repair and maintain the ditch, either by virtue of any prescriptive rights acquired by plaintiff, or under the mutual drainage act, and the alleged agreement thereunder. This court will also consider the special defenses interposed by the town and county as public corporations, and the liability of the highway commissioners and county superintendent, officially and individually.

█ The alleged formal deficiencies of the complaint, urged by defendants, to the effect that numerous causes of action were pleaded in the same count in violation of the Civil Practice Act (ch. 110, par. 157, § 33, subpar. (2), Ill. Rev. Stat. [Jones Ill. Stats. Ann. 104.033, subpar. (2)]), are without merit, inasmuch as the various breaches of duty alleged by plaintiff were based upon the same set of facts, and could be properly treated as a single cause of action, and set forth in the same count.

██ With reference to plaintiff's theory that defendants have violated his prescriptive rights, it is an established rule that the right to be free from surface waters may be acquired by prescription. (*Zerban v. Eidmann,* 258 Ill. 486, 492.) Where the owner of the dominant estate diverts the water from its natural course by constructing an artificial channel through which the water flows uninterruptedly for more than 20 years, other proprietors benefited thereby are deemed to have an easement by prescription in the new watercourse, and the water may not be restored to its original course. (*Broadwell Spec. Drain. Dist. No. 1 v.*

*Lawrence,* 231 Ill. 86; *Mauvaisterre Drainage & Levee Dist. v. Wabash Ry. Co.,* 299 Ill. 299.)

It is admitted that the ditch involved herein, constructed by the highway commissioner of the Town of Bourbonnais, diverted the water for some 40 years from its natural course, whereby it had overflowed onto plaintiff's land. It would appear, therefore, that plaintiff did acquire prescriptive rights against certain individual defendants prohibiting them from restoring the water to the original course.

 Whether such prescriptive rights could be acquired against the Town of Bourbonnais and its successor, the County of Kankakee, depends upon whether the property was held by the town for a public or private use. Although it is recognized that municipal corporations, as contrasted with the State and Federal governments, may be subject to the statute of limitations to the same extent as private individuals (*Phillips v. Leininger,* 280 Ill. 132; *Ebell v. City of Baker,* 137 Ore. 427, 299 Pac. 313) nevertheless, they do enjoy immunity in matters involving public rights. (*Pew v. City of Litchfield,* 115 Ill. App. 13; *City of Chicago v. Middlebrooke,* 143 Ill. 265.) Courts have defined the distinction, and held that public rights or uses are those in which the public has an interest in common with the people of such municipality, whereas private rights or uses are those which the inhabitants of a local district enjoy exclusively, and the public has no interest therein. (*Brown v. School Trustees,* 224 Ill. 184.)

 In the instant case, the apparent purpose of the construction and maintenance of the ditch was to drain the public highway and keep it open for traffic. This would appear to be a use from which the public at large benefits, and in which it has an interest in common with the people of the township. (*Pew v. City of Litchfield, supra.*) Therefore, the town could properly claim

immunity from the operation of the statute of limitations, and from any prescriptive rights and correlative duties asserted by plaintiff.

■ However, even if this court were to regard the construction of the drain as a private function, and the exercise of a private right, and thereby determine that plaintiff did acquire prescriptive rights against the town and its successor, nevertheless, these rights merely imposed a duty upon the defendants not to restore the original watercourse by any wrongful overt act.

In the cases relied upon by plaintiff where prescriptive rights were invoked and defendant's conduct enjoined, there were overt attempts by the defendants therein to restore the original watercourse by building a new line of tile (*Broadwell Spec. Drain. Dist. No. 1 v. Lawrence, supra*) or a new dam. (*Zerban v. Eidmann, supra.*) These cases do not hold that defendants may be compelled at their own expense to perpetually secure plaintiff's property rights for him from the adverse forces of nature. Nor has plaintiff cited any other cases establishing such rights on behalf of one who acquires an easement by prescription.

■■ The law, on the contrary, recognizes that it is the duty of the owner of an easement to keep it in repair (*Murtha v. O'Heron,* 178 Ill. App. 347), and no obligation is generally imposed upon those whose lands are thus placed in servitude to make repairs (*Prescott v. Williams,* 5 Metc. (Mass.) 429, 39 Am. Dec. 688; 67 C. J. 908.) The proper remedy ordinarily is that the owner of the easement has the right to go on the servient tenement to keep the drain in repair (*Wessels v. Colebank,* 174 Ill. 618; *Nixon v. Welch,* 238 Iowa 34, 24 N. W. (2d) 476). Such an interpretation is consistent with our fundamental concepts respecting property rights whereby one owning property is expected to protect those rights himself, and the only duty of others is not to actively invade them.

In the instant case defendants have not attempted by any overt act to restore the water to its original course, and there is no allegation that plaintiff has been deprived of the right to protect his easement in the drain and keep it in repair. Therefore, there is no infringement of plaintiff's prescriptive rights which would warrant the issuance of a mandatory injunction and damages.

The second theory upon which plaintiff predicates his cause of action is apparently that a mutual drainage ditch was created under the Act of 1889, whereby defendants were obligated to keep the ditch in repair, and their failure to do so resulted in irreparable damage to plaintiff, warranting the issuance of a mandatory injunction.

The relevant provision of the statute provides that whenever any ditch shall be constructed by mutual license, consent or agreement of the owners of adjoining lands, either separately or jointly, so as to make a continuous line across the lands of said several owners, then such drain shall be held to be a drain for the mutual benefit of all the lands so interested therein.

This type of drain must be constructed in a continuous line over adjoining lands of different owners, and with their mutual consent. In the case at bar the drain was constructed in a continuous line, but not over plaintiff's property, nor with his, or his predecessor's consent; in fact the only owner over whose property the ditch passed, and who allegedly consented, is defendant Hamilton. The alleged consent of the owner of the Brosseau lands would not appear to be material to the formation of the mutual drainage ditch, since no part of the drain crossed his lands.

However, even if it were determined that a mutual ditch were created involving the defendants, there is no provision in the statute requiring the repair and

maintenance of such mutual ditch. The courts however, have considered the obligations of members of such a drainage ditch.

In *Cox v. Deverick*, 272 Ill. 46, 53, relied upon by both parties, the court held that the distribution of the burden of maintaining such a mutual drainage ditch, established under the Act, must necessarily be governed by the facts in each case. The court rejected the contention of plaintiff therein that liability should categorically be imposed upon the several owners for maintaining in repair that portion of the ditch extending through their premises.

The court pointed out that the ditch may be constructed partially for the benefit of the servient estate, and partially for the benefit of the dominant estate, or solely for the benefit of the dominant estate, and inferred that an equitable division of the burden of maintaining such ditch depended upon the benefits conferred. An injunction was granted therein prohibiting the construction of a dam changing the watercourse, but the court reversed that portion of the decree compelling defendant to clean and keep free from obstruction that portion of the ditch extending through his premises.

A similar approach was taken by the court in *Sullivan v. Bagby*, 335 Ill. 192, 197, where the court held that the cost of maintenance of a mutual drain, constructed by one of the parties, from which both members benefited, rested equally upon them. The court stated that where one of the parties failed to clean out the portion of the ditch on his lands, the other had the right to go on his premises to clean the drain, but, was prohibited from removing the drain or changing the watercourse, as defendant therein sought to do.

These cases indicate that although the Act of 1889 imposes no duty of maintenance and repair upon the members of a mutual drainage ditch, the courts will

apportion such duties in accordance with the benefits conferred by the drain, and will enjoin any overt acts designed to change the watercourse.

■ It is evident, however, that these cases do not support plaintiff's theory that defendants, either individually or jointly, owed him any duty to repair the ditch. In both of the aforementioned cases, the complaining party was a member of the mutual drainage ditch, and the drain passed through his land. In the instant case, it is admitted that plaintiff was not a member of the mutual drainage ditch, nor was he a party to, or in privity with, any alleged agreement, express or implied, for the construction and maintenance of the drain. He was merely an incidental beneficiary therefrom, and was not entitled, therefore, to invoke any obligations which the members may have owed each other. Furthermore, even these obligations did not include an absolute duty to maintain and repair the ditch, but at most, to pay a proportionate share of the cost of maintenance in accordance with the benefits enjoyed.

Plaintiff herein benefited substantially from the drainage ditch, inasmuch as he allegedly sustained irreparable damage when it became filled with debris; nevertheless, he seeks to impose upon defendants the entire obligation of maintaining the drain, including the portion over the land of unknown third parties, without offering to contribute any part of the cost. Such a claim would be rejected even if plaintiff land was embraced in the drainage district, and a fortiori, under the circumstances alleged herein. Therefore, plaintiff's second theory for imposing liability must fail.

The facts herein are clearly distinguishable from cases relied upon by plaintiff, where landowners acting either singly, or in concert, have used their property so as to cause damage to the property of an

adjoining owner. (*Kappes v. Appel,* 14 Ill. App. 170; *Beninghoff v. Futterer,* 176 Ill. App. 579.) The alleged irreparable damage to plaintiff was caused by the forces of nature, the flood waters, rather than by any overt act of defendants, and, as hereinbefore noted, defendants were not obliged to actively maintain, at their own expense, any structure on their land for plaintiff's benefit and protection from natural phenomena.

 Furthermore, even if a duty could be found to exist under either of the theories advanced by plaintiff, the Town of Bourbonnais could not be bound by any alleged agreement to perpetually maintain the ditch, entered by the highway commissioner, in the absence of an authorization by the electors. (*Gregg v. Town of Bourbonnais,* 327 Ill. App. 253.) The fact that the county has taken over the control and maintenance of the highway and right-of-way would constitute a further ground for relieving the town of liability. The county, in turn, as an agent of the State, clothed with limited powers of a governmental character, could not be held liable for the negligence of its officers in discharging their public duties. (*County of Cook v. City of Chicago,* 311 Ill. 234; *Hollenbeck v. County of Winnebago,* 95 Ill. 148.)

 Nor can liability be imposed upon the highway commissioners, as plaintiff urges, by analogy to the cases where commissioners have negligently constructed a drain, and thereby caused damage to property for adjacent landowners. (*Tearney v. Smith,* 86 Ill. 391.) There is no allegation herein that either highway commissioner had any part in the construction of the ditch, or that it was negligently constructed. Commissioner De Long held office some five years after the highway and ditch had been taken over by the county, and Commissioner Fraser held office some eleven years thereafter. Their alleged negligence re-

lated solely to the maintenance of the ditch. As hereinbefore stated, they were under no duty to plaintiff to repair it under the theories of liability considered. Nor could liability be imposed under the statutory provision authorizing them to keep the roads and bridges in repair, since there is no allegation that such roads were not properly maintained, or affected by the overflowing of the ditch.

 Similarly, no liability could be imposed upon the county superintendent, Harold D. Tyson, for failure to perform any of his authorized duties. Although he had authority to open ditches to drain roads (ch. 121, par. 8, § 8, subpar. (D), Ill. Rev. Stat. [Jones Ill. Stats. Ann. 120.008, subpar. (D)]), there is no allegation that the highway herein was flooded, or that the superintendent had any authority or duty to clean the ditch to drain plaintiff's land for agricultural purposes.

On the basis of our analysis of the various legal concepts presented on this appeal, it is our judgment that the trial court committed no error in dismissing the complaint. There was no duty owed by any of the defendants to plaintiff to repair and maintain the drainage ditch under any theory of liability, and, in addition, special defenses existed with reference to the Town of Bourbonnais and the County of Kankakee. Therefore, the judgment of the circuit court dismissing the complaint should be affirmed.

*Judgment affirmed.*