CLARENCE COOMER *et al.*, Plaintiffs-Appellants, *v.* CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellee.

Third District    No. 80-227

Opinion filed December 12, 1980.

John C. Hedrich, and Donald R. Rayfield, of Pierson & Maloney, both of Princeton, for appellants.

James P. Daley and George H. Brant, both of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal of an order granting the motion of the Chicago and North Western Transportation Company, hereinafter referred to as North Western, for summary judgment in the Circuit Court of Bureau County. The plaintiffs, Clarence Coomer and Ted and Thomas Strouse, appeal.

In October of 1904, the plaintiffs' predecessor in interest, Thomas and James Cecil, and North Western's predecessor in interest, Chicago and Northwestern Railway Company, entered into an agreement which is the basis of the present controversy. The Cecils and the Railway Company were adjacent landowners in Bureau County. The Railway Company's property was improved with raised embankments, railroad tracks and other related facilities. The Cecils' land was located to the south and east of the raised right of way. At the time, the Railway Company had an open culvert and a railroad bridge spanning an abandoned canal right of way through which the surface water from the Cecils' acreage flowed. Apparently a dispute arose concerning the effectiveness of that drainage system, because in October 1904, the two parties negotiated an agreement modifying the culvert. In consideration for the Cecils' release of their past claims against the Railway Company, the Company agreed to fill in the culvert and to install a 12-inch diameter iron culvert which was to span its elevated right of way. The Railway Company also permitted the Cecils to sink drain tiles from their property onto the right of way and connect with the culvert. Furthermore, the Cecils agreed to release all future claims against the Railway Company for damage to their property "by reason of filling up the openings spanned by said culvert * * * and bridge * * * by reason of the floods or overflow of water * * * [and] by reason of the

construction and maintenance and operation of any future track or tracks within the limits of the right of way of said Railway Company and over the tile drains to be laid within the limits of said right of way." Lastly, the Cecils agreed to "assume all responsibility for the preservation of [their] tile drain or for keeping said tile drains and iron culvert from being stopped up by debris or otherwise and that said Railway Company shall not assume any responsibility for the stoppage of said tile drains and iron culvert or for the preservation of said tile drains whenever laid." The written agreement was executed by the Cecils, sealed and possibly recorded. The Railway Company then replaced the bridge and open culvert with the iron culvert and the Cecils ran tile up to the culvert opening, as provided in the agreement.

Then, in the spring of 1972, North Western employees allegedly bored through the tile drain located within the right of way while they installed a telecommunications pole. The record is unclear as to the proximity of the breached tile to the iron culvert. North Western failed to promptly notify the plaintiffs of the damaged drain tile, and they did not learn of it until one year later. The tile went unrepaired and caused water to back up onto their farm property from 1972 to 1975, thereby damaging their crops for those years. Apparently the plaintiffs replaced the tile in 1975.

On December 15, 1977, they brought the instant action alleging that North Western negligently installed its telecommunication pole, which proximately caused property damage to their tile and farm land. After pretrial discovery, North Western moved for summary judgment. In its motion, North Western characterized the 1904 agreement as an easement conveyed from the Railway Company to the Cecils in return for their release of all future claims against it arising from operations, maintenance and construction upon its right of way. Thus, North Western owed no duty to the plaintiffs as a matter of law. Second, it alleged that even if the 1904 agreement did not release all claims against North Western, the plaintiffs were contributorily negligent as a matter of law because they failed to mark the tile line or otherwise advise North Western of its location.

The trial court, considering the entire record, pleadings and discovery, and construing the allegations strictly against the moving party, North Western, and liberally in favor of the plaintiffs, concluded that no question of fact existed and that North Western was entitled to judgment in its favor as a matter of law. The court found, *inter alia*, that the agreement was binding on the plaintiffs and that the intent of the agreement was to release the railroad "from any damages caused from floods or water overflow. The damages claimed in this cause are alleged

to have been caused by flooding." Thus the plaintiffs were found to have released the present cause of action. They appeal the order dismissing their cause of action.

They allege on appeal that the trial court: (1) misinterpreted the intent expressed in the 1904 agreement; (2) even if the agreement intended to release North Western from liability for its negligent conduct, the agreement violates the public policy of this State; and, (3) the location of the culvert should have placed North Western on notice that the drain tile was nearby, thus they were not contributorily negligent. North Western counters, arguing that by reason of the 1904 agreement it had an absolute privilege to obstruct the natural flow of the surface water and that the plaintiffs were contributorily negligent as a matter of law because they failed to mark the location of the drain tile.

■■ The sole function of a reviewing court in reviewing the trial court's entry of a summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised. (*Szczesny v. W. G. N. Continental Broadcasting Corp.* (1974), 20 Ill. App. 3d 607, 315 N.E.2d 263, *appeal on other grounds after remand* (1977), 54 Ill. App. 3d 619, 370 N.E.2d 11.) If no such issue remained, then we must determine whether judgment was correctly entered for the moving party as a matter of law. (*Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.) We are not limited on review to the precise reasons expressed by the trial court in entering its summary judgment. *Murphy v. Rochford.*

Accordingly, we deny North Western's motion to strike portions of Coomer's reply brief which refers to North Western's "positive overt" acts. This language does not imply a cause of action based on an intentional tort as North Western alleges. That language merely characterizes the defendant's alleged negligence as misfeasance instead of nonfeasance. We grant its motion to strike portions of Coomer's reply brief which introduce facts not properly adduced at the trial court: the method of drilling the hole and the proximity of the hole to the culvert. The issue of whether the 1904 agreement was recorded, as alleged in Coomer's reply brief and stated in the trial court's memorandum decision, is an issue of fact not supported by the record. But for our purposes that allegation is immaterial because North Western was in privity with its predecessor and therefore had knowledge of the agreement's contents.

We further find that North Western is not entitled to a judgment as a matter of law and we reverse the judgment order and remand this cause for further proceedings.

■■ In order to construe properly the 1904 agreement, we must examine the then-existing law regulating the natural flow of surface waters

between adjacent landowners. Illinois recognizes the "civil law" rule which gives the owner of the dominant (higher) ground an easement in the servient (lower) tract to allow surface waters to naturally flow from the dominant land to the servient land. (*Mello v. Lepisto* (1966), 77 Ill. App. 2d 399, 401-02, 222 N.E.2d 543, 545; *Peck v. Harrington* (1884), 109 Ill. 611.) The dominant owner may "change the course of a natural water-course within the limits of his own land if he restores it to the original channel before the lands of another are reached, provided in changing the course of the stream he does not cast upon the lands of an adjoining proprietor water which would not in a course of nature flow upon such adjoining premises." (*Daum v. Cooper* (1904), 208 Ill. 391, 397-98, 70 N.E. 339, 342.) The dominant owner also may improve the natural flow within his land which increases the natural flow onto the servient tract as long as the increased flow does not exceed the natural channel. (*Templeton v. Huss* (1973), 9 Ill. App. 3d 828, 838, 292 N.E.2d 530, 538.) Conversely, the servient owner must accept the natural flow of the surface water and has no right to stop or impede it. But he is not required to accept water flowing from the dominant tract that would not ordinarily do so in the course of nature. (*Gough v. Goble* (1954), 2 Ill. 2d 577, 119 N.E.2d 252; *Freeland v. Dickson* (1978), 63 Ill. App. 3d 13, 379 N.E.2d 903.) However, a long-recognized exception to this rule holds that a railroad company, in improving its right of way, may make reasonable alterations of the natural flow, provided it does not damage adjacent dominant tracts. (*Drda v. Illinois Terminal R.R. Co.* (1918), 210 Ill. App. 640.) Thus absent any agreement, the Cecils (the dominant owners) could not have placed the tile drains on the company's right of way (the servient tract), and the company could not have unreasonably altered the Cecils' drainage by filling in its culvert.

Nevertheless, the servient tract owner can acquire, by contract or prescription, the right to be free from the flow of surface water. (93 C.J.S. *Waters* §122 (1956); *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 90 N.E.2d 645.) We find that the parties intended the 1904 agreement to alter their correlative civil law rights and duties by the Railway Company granting to the Cecils an easement appurtenant across its right of way to dispose of their natural flow.

In Illinois one may acquire an easement to discharge surface water on lands of another by express grant, reservation or license. (93 C.J.S. *Waters* §120 (1956); *McIntyre v. Harty* (1908), 236 Ill. 629, 86 N.E. 581 (parol evidence found to be an insufficient basis for an easement).) An easement is property in the nature of land. It is a liberty, privilege or advantage without profit which one landowner has over another. It is an incorporeal property interest imposed upon corporeal property for the benefit of the grantee's property. The benefited tract is the dominant

tenement, and the burdened land is the servient tenement. An easement created by contract or covenant is considered in effect a grant. (*Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 51 N.E.2d 132.) No particular words are necessary to constitute a grant of an easement. Any words clearly showing such intention are sufficient to confer an easement which is grantable by law. (*Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 371 N.E.2d 1003.) Because an easement is an interest in land, a grant of an easement by contract must contain all the formal requirements of a deed. The conveyance of an easement by contractual agreement should be supported by consideration (*Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37), and the terms of the contract must be unequivocal. *Aebischer v. Zobrist.*

■■ The instrument creating the easement is construed in accordance with the intention of the parties. (*Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 51 N.E.2d 132.) That intention is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction. (*Horween v. Dubner* (1965), 68 Ill. App. 2d 309, 216 N.E.2d 288.) Such circumstances include the situation of the parties, the state of the thing conveyed, the object to be obtained, and the practical construction given by the parties by their conduct. (*Stattin Brothers Furniture Co. v. Hauf* (1950), 342 Ill. App. 446, 96 N.E.2d 646; *Waller v. Hildebrecht* (1920), 295 Ill. 116, 128 N.E. 807.) For example, in *Glen View Club v. Becker* (1969), 113 Ill. App. 2d 127, 251 N.E.2d 778, an agreement titled "lease in perpetuity", which erroneously described the servient tract, was characterized as an easement. See also *Magnolia Petroleum Co. v. West* (1940), 374 Ill. 516, 30 N.E.2d 24.

In the case at bar the 1904 agreement created two easements. While the agreement was not denominated as such, we find that it evinces the parties' intention to mutually burden the other's property for the benefit of their own tract. The instrument described in writing the location of easements. The last paragraph specifically declares that "all grants and covenants in this instrument contained shall run with and bind the title to the land and premises * * *." This declaration shows that the parties contemplated not just a personal release of liability, but easements appurtenant. The Railway Company conveyed to the Cecils an easement to "construct and place within said Railway Company's right of way and on either side of said right of way, a tile drain twelve (12) inches in diameter to connect with said cast iron pipe."

The Cecils, in consideration for the easement granted to them, granted to the Railway Company an easement to flood their lands and relinquished other rights which are the basis of this controversy. First, they surrendered all causes of action against the company occurring prior to the 1904 agreement. Second, they released all claims that might have

risen from the company filling up the culvert. Third, they surrendered all future causes of action "by reason of floods or overflow of water." This provision is in effect the easement granted by the Cecils. Fourth, they released all future claims caused by the construction, maintenance, and operation of any future tracks within the right of way. Last, the Cecils accepted the responsibility of maintaining their easement.

■■ In construing the 1904 agreement, we can not agree with the trial court that, as a matter of law, the Cecils released the Railway Company and its successors from the alleged negligent action. Looking to the circumstances attending the transaction, the situation of the parties in 1904, the state of the thing granted, and the object to be obtained, we disagree with the trial court's interpretation that the latter four covenants listed above free North Western.

First, we find that the language of the instrument releasing all claims "by reason of filling up the openings spanned by said culvert" intended to cover only those losses incurred through replacing the bridge with the iron culvert. Thus, upon installation of the culvert, this portion of the agreement is without effect.

Second, we find that the release of all future claims by reason of flood or overflow was an easement granted by the Cecils to the Railway Company which allowed it to flood their property incident to the ordinary functioning of the drainage system as contemplated in the agreement. If we accept North Western's interpretation that the agreement released it from any negligence resulting in flooding, the agreement fails because of a lack of consideration. According to its argument, North Western could negligently render completely inoperable the Cecils' agreed upon consideration—the easement across its right of way. A more reasonable interpretation is that the parties believed that even with the iron culvert and tile drain, some stoppage would occur and that, therefore, the Railway Company would not be held responsible for such incidental and temporary flooding. Here, plaintiffs alleged loss caused by negligent flooding which was not released by this portion of the agreement.

Third, we find that the surrender of all future claims by reason of the construction, maintenance and operation of future track was not intended to include the negligent installation of telecommunication poles. Agreements releasing railroads from future liability arising from railroad operation and construction have traditionally been construed to exclude negligent railroad construction. (66 Am. Jur. 2d *Releases* §33, at 711 (1973).) In other words, courts have interpreted this standard release language to release the railroad from only reasonable losses incurred by adjacent landowners. We agree with this interpretation of the 1904 agreement, especially in light of the parties' preexisting civil law relationship. Accordingly, North Western is not released from its alleged

negligence. The provision in the agreement directing the Cecils to preserve and maintain their easement merely restates established Illinois law that the dominant owner must keep his easement in proper condition so as to prevent unnecessary damage to the servient tract. (*Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 90 N.E.2d 645; 28 C.J.S. *Easements* §94 (1941).) We can not reasonably infer from this provision the release of the servient owner's negligence which materially disrupts his easement.

Absent an agreement to the contrary, the servient owner may use his property for any purpose consistent with the dominant owner's enjoyment of his easement. The servient owner may use his land in any manner which does not materially interfere with or obstruct its use as a right of way. (*Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 352 N.E.2d 458; 28 C.J.S. *Easements* §91(a) (1941).) While courts have tended to construe strictly the easement agreement so as to permit the greatest possible use of the servient tenement (*Peoples Gas Light & Coke Co. v. Cook Lumber Terminal Co.* (1930), 256 Ill. App. 357), in the case at bar the defendant's alleged negligent acts disrupt the essence of the 1904 agreement, being an easement across its right of way. We can not say that North Western used its property consistently with the agreement.

■■ Furthermore, we do not find the plaintiffs contributorily negligent as a matter of law. First, we note that North Western, as a successor in interest to the Railway Company, had notice of the existence and location of the plaintiffs' easement. We are not ready to impose upon the dominant owner the duty of marking his easement where the servient owner has knowledge of the existence and approximate location of an underground easement. Second, one case cited by North Western which purportedly required the dominant owner to mark his easement, *Young v. Herrington* (Tex. Civ. App. 1958), 312 S.W.2d 685, found the dominant owner contributorily liable for failing to mark his easement only after the servient owner notified him of prospective construction on the servient tenement. We find that this rule better accommodates the interests of both the dominant and servient tracts. The record does not indicate that North Western notified the plaintiffs prior to its construction. Because North Western did not discharge this duty, we cannot find the plaintiffs contributorily negligent as a matter of law.

Accordingly, we reverse the judgment of the Circuit Court of Bureau County and remand for further proceedings.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.