THOMAS REIMER, Plaintiff-Appellee, v. JAMES LEAHY, Defendant-Appellant.

Second District   No. 2—90—0245

Opinion filed October 25, 1990.—Rehearing denied November 29, 1990.

Paul A. Krieg, of Holmstrom & Kennedy, P.C., of Crystal Lake, for appellant.

John A. Strom, of Strom, Sewell & Larson, of Belvidere, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, James Leahy, appeals from the judgment of the circuit court of Boone County in favor of plaintiff, Thomas Reimer, in the amount of $762.69, for defendant's share of the cost of repair of a mutual drainage system.

Defendant raises one issue on appeal: whether an owner of prop-

erty owes a duty, pursuant to the Illinois Drainage Code (Ill. Rev. Stat. 1989, ch. 42, par. 1—1 *et seq.*), to make a monetary contribution to a neighbor for his unilateral repair of a mutual drainage system running through both properties.

On October 12, 1989, plaintiff filed a small claim complaint alleging that defendant was indebted to plaintiff in the amount of $762.69 "for tiling monies advanced for tiling a portion of the Defendant's tiling system." At trial, the parties orally stipulated to the facts and submitted briefs to the court. The parties agreed that the case would be decided on the stipulation of fact and the briefs. Plaintiff also submitted a copy of an agreement for repair and upkeep of the drainage system.

The parties stipulated to the following facts. The drainage system running through both plaintiff's and defendant's property had been constructed by a common grantor of the parties' property at a time when the parcels were part of a larger tract. Martin Keagy had owned three farms, and, in 1959, when he disposed of two of them, a drainage agreement was prepared and signed by the contracting parties, Martin and Alma Keagy, Hans and Anna Reimer, and Thomas and Maxine Reimer. This agreement was not signed by defendant, and it was not a matter of public record when defendant purchased the third farm, which was south of the two farms purchased by the Reimers. The farm drainage system services all three of the farms originally owned by Keagy, and defendant's farm is at the southern end of the drainage tiling system. At the time of trial, plaintiff owned the remaining two farms, which are adjacent to the north end of defendant's farm. The tiling system drains from south to north and outlets across the State line in Wisconsin. The drainage water from defendant's farm runs through the drainage tile across plaintiff's two farms.

Early in 1989, plaintiff informed defendant of his intention to repair the drainage system to clear blockage in the system located in the northernmost farm owned by plaintiff. Plaintiff asked defendant to contribute to the expense of the project. Defendant told plaintiff he would consider it, but he failed to inform plaintiff of his decision. Plaintiff made repairs and improvements on his own property to the drainage system without defendant's commitment to reimburse plaintiff. While no work was performed on defendant's property, the parties agreed that the improvements benefited defendant's property in a proportion equal to one-third of the total benefit to the entire drainage system. The cost of the repairs and improvements made by plaintiff was $2,288.07.

During the proceedings below, plaintiff informed the court that he was relying entirely on section 2—8 of the Drainage Code (Ill. Rev. Stat. 1989, ch. 42, par. 2—8) and related case law as the basis of his claim for money damages. It was agreed that plaintiff was not proceeding on any contractual or quasi-contractual theory in support of his claim. After considering the briefs, the circuit court ordered defendant to pay $762.69, one-third of the total cost of repairs, and defendant now appeals.

Section 2—8 of the Drainage Code, which concerns the nature of a mutual drainage system, provides in relevant part:

"When a ditch, covered drain or levee is privately constructed through or on a tract of land and the ownership of such tract is thereafter divided, such ditch, covered drain or levee shall thereupon be deemed a drain or levee for the mutual benefit of all the portions of the original tract connected to, or protected by, such ditch, covered drain or levee." (Ill. Rev. Stat. 1989, ch. 42, par. 2—8.)

We note, initially, that the drainage agreement between plaintiff and defendant's predecessor is irrelevant as the parties stipulated below that plaintiff was not proceeding on any contractual theory.

■ Defendant argues that article II of the Drainage Code does not give rise to a statutory duty for members of a mutual drainage system to contribute to the cost of repairing the system. We agree. The pertinent provisions of article II of the Drainage Code give rise to perpetual easements arising from the construction of drainage systems by consent or license of the parties involved. (Ill. Rev. Stat. 1989, ch. 42, pars. 2—8, 2—10.) The purpose of these provisions of the Drainage Code is merely to enlarge drainage rights as they existed at common law and to create mutual easements before the expiration of the necessary common-law period. *King v. Manning* (1922), 305 Ill. 31, 37, 136 N.E. 730 (referring to the statutory predecessor of the current Drainage Code); *Fobar v. Higginson* (1955), 6 Ill. App. 2d 29, 33, 126 N.E.2d 521.

■ Article II of the Drainage Code does not address the general question of who is to be responsible for the cost of maintaining and repairing a mutual drainage system. Members of a mutual drainage system are only required to refrain from making unlawful connections to the drain (Ill. Rev. Stat. 1989, ch. 42, par. 2—9) or wilfully interfering with the operation of the drain (Ill. Rev. Stat. 1989, ch. 42, par. 2—12). The only provision of the Drainage Code which even arguably touches on the question of who is to pay the cost of maintenance and repair is section 2—11, which provides:

"The owner of any land connected to or protected by such a mutual drain or levee may, *at his own expense,* go upon the lands upon which the drain or levee is situated and repair the drain or levee, and he shall not be liable for damage to lands or crops unless he is negligent in performing the work." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 42, par. 2—11.)

This provision clearly does not require that the members of a mutual drainage system have a duty to contribute to the cost of its repair and maintenance.

Other courts examining this question have also concluded that predecessor statutes similar to the pertinent provisions of the Drainage Code do not give rise to a general duty to contribute to the cost of repair and maintenance. *Fobar,* 6 Ill. App. 2d at 32, 126 N.E.2d at 522-23 ("there is no statutory duty on the part of the members of such system to repair and maintain the system"); *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 560-61, 90 N.E.2d 645 ("there is no provision in the statute requiring the repair and maintenance of [a] mutual ditch").

■ This is not, however, the end of the inquiry, for a court may, in the exercise of its equitable powers, provide an appropriate remedy where none is provided by statute. (See *Independent Voters v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90, 104, 510 N.E.2d 850.) Courts in Illinois have long recognized the existence of an equitable remedy for members of a mutual drainage system seeking to compel their fellow members to contribute to the cost of maintaining or repairing the system. Under this equitable approach, which is to be determined based on the facts of each case, members of a mutual drainage system can be compelled to bear a portion of the cost of repair in proportion to the benefit they receive as a result. See *Sullivan v. Bagby* (1929), 335 Ill. 192, 197, 166 N.E. 449; *Cox v. Deverick* (1916), 272 Ill. 46, 53, 111 N.E. 560; *Harris v. Village of Fithian* (1977), 48 Ill. App. 3d 1019, 1021-22, 363 N.E.2d 637; *Fobar,* 6 Ill. App. 2d at 33, 126 N.E.2d at 523; *Savoie,* 339 Ill. App. at 561, 90 N.E.2d at 651.

A court's equitable apportionment of the cost of maintaining and repairing a mutual drainage system, then, is not based on either a statutory duty or an implied-in-fact agreement to share such cost. Because its focus is the need to compensate one member of the mutual drainage system for the benefit he imparts to another member, the equitable remedy discussed above awards recovery based on a theory referred to as quasi-contract, contract implied in law, or *quantum meruit,* the obligations of which are imposed independently of any agreement between the parties in order to prevent an unjust result

(see *Knaus v. Dennler* (1988), 170 Ill. App. 3d 746, 751, 525 N.E.2d 207).

Here, however, plaintiff has explicitly acknowledged in the stipulation of facts presented in the trial court that he seeks recovery based *solely* on an alleged statutory duty owed by defendant and not under a contractual or quasi-contractual theory.

As we stated above, the Drainage Code does not give rise to a statutory duty on the part of members of a mutual drainage system to contribute toward the cost of repairs or maintenance. Although a member may be compelled to do so under an equitable, or quasi-contractual, theory, plaintiff here has elected not to proceed on such a basis. Also, while parties may contract between themselves for apportionment of the cost of maintenance and repair of a mutual drainage system, plaintiff stipulated below that he was not proceeding under a contractual theory, although such a contract did exist between plaintiff and defendant's predecessor. Thus, under the stipulated facts there is no basis for the trial court to compel defendant to contribute toward the cost of repairing the mutual drainage system under article II of the Drainage Code. Accordingly, the judgment of the circuit court of Boone County must be reversed.

The judgment of the circuit court is reversed.

Reversed.

McLAREN AND GEIGER, JJ., concur.